## BOROUGH OF GREENSBURG v. H. P. LAIRD.

### APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY.

Argued October 16, 1890—Decided January 5, 1891.

To a scire facias sur a municipal claim for curbing and paving a borough street, filed under the act of April 23, 1889, P. L. 44, an affidavit of defence averring that said act was inapplicable to the borough,—incorporated and continuing under the provisions of a special act,—was moreover unconstitutional, and that the street, many years preceding the improvement, was macadamized and thereafter kept in repair at the public expense, a refusal of judgment for want of sufficient affidavit of defence was affirmed.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, MC-COLLUM and MITCHELL, JJ.

No. 197 October Term 1890, Sup. Ct.; court below, No. 112 May Term 1890, C. P.

On February 13, 1890, the " Burgesses and Inhabitants of the Borough of Greensburg " issued a scire facias against Harrison P. Laird, sur municipal lien No. 1434, M. L. D., which exhibited a claim for $232.50, being the one third of the cost and expense of the curbing with stone and paving with brick ninety-three feet of Main street, in said borough, at $7.50 per foot front, with interest from November 20, 1889, the date when the work was completed, and $11.67, five per cent additional, as attorneys' commissions; the claim being filed on February 13, 1890, against a certain lot of the defendant fronting said width on said street, and the work having been done in the manner prescribed by an ordinance enacted October 18, 1889.

This ordinance recited that two thirds of the owners of property representing not less than two thirds in number of feet of the properties fronting on Main street, between Second street and the borough line on the north, had presented their petition praying that said street between the said points, be paved with fire brick, and that the ost thereof be " assessed and collected

Statement of Facts.

in the manner provided by law;" and proceeded to enact that the said street, between said points, should be "graded, curbed and paved with fire brick, in accordance with the plans and specifications submitted by the borough engineer, which are hereby approved," and that two thirds of the cost of the curbing and paving of the same should be assessed upon and collected from abutting owners by an equal assessment per foot front, and for the manner in which contracts should be let, the work performed, and the assessments collected.

On March 3, 1890, an affidavit of defence was filed by the defendant, averring that the borough of Greensburg was incorporated by the act of February 9, 1799, 5 Carey & B. L. 362,* by § 4 of which the power to levy and collect taxes for borough purposes was limited to one per cent on the valuation of taxable property by the last assessment; that said borough under its charter had no officers known as a council or town council; that if the power to file and enforce the claim in controversy was claimed to exist under the provisions of the act of April 23, 1889, P. L. 44, the said act did not apply to the borough of Greensburg; that on Main street, in said borough, between Second street and the borough line on the north, there were two church lots and the court-house lot which, under the laws existing prior to the passage of said act of 1889, were exempt from taxation, and said act, subjecting said lots to taxation for local purposes, repealed or suspended the general laws exempting them, without notice thereof indicated in the title of the act, in violation of § 3, article III. of the constitution; that the said act of 1889 offended also against § 6 and clauses 2, 11, and 17 of § 7, article III. of the constitution. It was averred, further, that the claim was insufficient because it did not contain a specification of the various kinds of materials used and the quantity and value of each, with the breadth of the roadway paved, and such other information as would enable defendant to ascertain whether or not there had been an overcharge.

"And the said defendant further avers that Main street, in the borough of Greensburg, is a great public thoroughfare and

---

* There was no allegation, on either side, that Greensburg had ever become subject to the general borough act of 1851. For supplementary acts, see "Greensburg," Beitel's Titles of Corp., 85.

one of the principal streets in said borough ; and that the locus
in quo is partly abutting on the property of the defendant,
against which the claim is filed, situate on the west side of said
Main street; and that said Main street had been and was mac-
adamized for many years prior to the year of 1889, and was,
at the time the improvement for which this claim was filed
was commenced, in reasonably good condition and repair ; and
that at all times heretofore, for at least the last thirty years, it
had been kept up and repaired at the public expense."

A rule for judgment for want of a sufficient affidavit of de-
fence having been argued, the court, WHITE, P. J. 40th dis-
trict, specially presiding, on July 31, 1890, filed an opinion,
printed in full in Greensburg v. Laird, 8 Pa. C. C. R. 608, the
concluding portion of which was as follows :

The most meritorious defence set up is the last averment,
which we will now consider.   The defendant states that Main
street is a great public thoroughfare, one of the principal streets,
and that the locus in quo is partly abutting on his property
against which the lien is filed; that this street has been and
was macadamized for many years prior to 1889, and was at the
time the improvement was commenced, for which the lien is
filed, in reasonably good condition and repair, and that at all
times heretofore, for at least thirty years, had been kept up and
repaired at public expense.   From this the defendant contends
that the roadway, now newly paved, is on this Main street near
the court house and in the long since built up portion of the
town near its centre ; that having been paved by macadamiz-
ing, heretofore, at the public expense of the borough, to which
the defendant contributed his quota of taxes, his property can-
not now be specially assessed for the present paving.   If the
fact was, as stated by the defendant in his affidavit, that the
locus is in the old, well built up portion of the town, that it
has been paved before at the public expense, this lien cannot
be enforced against him.   The plaintiff's counsel did not so
much deny this principle, as he did that macadamizing, as averred
in the affidavit, was an original paving within the meaning of
the decisions.   We cannot agree with him.

The first reason for so concluding is, that, at the beginning
of the act of 1889, we find the expression " cause to be paved,

Opinion of Court below.

curbed and macadamized;" thus showing clearly, the legislature regarded macadamizing as a species of paving. What is paving? Says Webster: To lay or cover with stone or brick, so as to make a level or convenient surface for horses," etc. In the old American Encyclopedia, that source of reliable information, we find no large European city, except Rome with its Via Triumphalis, had paved streets until the twelfth century. Then it says, "Of late pavements have been much improved; stones have been squared so as to better fit each other, or the streets have been macadamized." What is macadamizing? It is defined in Webster, "To cover as a roadway, or path, with broken stone, so as to form a smooth, hard surface." It is not pedantic we trust, in these days when much is said about good road making, to say, it is the system of roadway making established by the Scotch engineer, John L. Macadam, who lived in New York during our Revolution, but returned to his native country, and in 1815 began it, and it became so popular that it is said, out of the 25,600 miles of public roads in Great Britain, less than 250 of them were not macadamized. Then, the system itself shows it to be a pavement, under a critical definition. We will not enlarge on it more than to remark, it contemplates large broken stones in the bottom, smaller ones toward the surface, the top covered with a crust of small stones, making a comparatively smooth, safe and convenient driveway. Then, says Justice AGNEW, in Wistar v. Philadelphia, 80 Pa. 511: "What would any one ordinarily understand is meant by paving streets at the expense of lot owners? Clearly, that paving which is customary." Our observation recalls that the streets of our Pennsylvania towns have been macadamized as the customary pavement. Then, in Huidekoper v. Meadville City, 83 Pa. 158, Judge LOWRIE says: "Paving the gutters with cobble-stones and the cartway with broken stones (macadamizing), is a paving within the meaning of the act of assembly." We conclude, then, that the averment of macadamizing is an averment of paving, within the meaning of the act of assembly and the decision, in that behalf.

It is not now a new question that where there has been a new paving of streets in our cities and large towns, and the expense of it has been assessed against the fronting lot owners, there cannot be an assessment against them for repair or re-paving.

Opinion of Court below.

Hammett v. Philadelphia, 65 Pa. 146, first so decided. There the affidavit of defence recited that the part of Broad street, in question, had been "well paved with cobble stone. . . . . laid by the city. . . . . with such material as they chose ; . . . . . the entire expense thereof, both of materials for paving and the laying, were paid by the then owner of the real estate to the city," etc. Then came Washington Ave., 69 Pa. 352, approving it, while deciding the first assessment was not applicable to rural property. Then came Seely v. Pittsburgh, 82 Pa. 360, a rural district complainant, in which the whole question is gone over. Then followed Orphan Asylum's App., 111 Pa. 144. There, the asylum appealed for relief, alleging a re-paving was assessed against it, when the street had been before paved and paid for by the lot owner. The relief was given. Then came Michener v. Philadelphia, 118 Pa. 535, which was a sewer case, but Justice PAXSON explained Hammett's case as one where the owners of property where directed to take up the pavement they had paid for, and lay down a new and expensive one for a public drive. In all these cases about paving, the original paving had been paid by the lot owner. No case had yet been decided, where the original paving was at public expense. On the contrary, in Huidekoper v. Meadville City, supra, the affidavit of defence averred that along a portion of the street an existing well-made pavement was removed, that the street had been open more than seventy years, and that the streets were all paved at public expense, to which defendant contributed his ratio, and the lien was held good. Then last fall came the case of Williamsport v. Beck, 128 Pa. 147, with the syllabus : " While the cost of an original paving of a city street may be assessed against properties abutting, as a species of taxation for special benefit accruing, the re-paving of such roadway, being a purely public duty for the general benefit, the cost thereof cannot be imposed on abutting properties, even though the cost of the original paving had been paid out of the city treasury." Mr. Justice STERRETT says, in the introduction of his opinion : " The main question in this case is, whether the cost of re-paving a public street or thoroughfare can be legally charged against the property fronting thereon. This is neither a new nor an open question. It has long since been definitely settled that, as a general rule, it cannot be

Opinion of Court below.

done." Then he proceeds to quote from Hammett's case, and, on its principles, affirms the judgment.

With all deference to the learned justice, for whose ripe experience, eminent abilities and discriminating judgment we have the highest admiration, it *is* a new question, whether, when a street has once been paved at the public expense in the old built-up portions of our cities and our towns, the expense of a new or re-paving can be assessed against abutting lot owners. We can find no case until this one, where it was distinctly decided. We do not find, however, in Justice STER-RETT's opinion this question particularly discussed, but he affirms the judgment on the general principles of the Hammett case. Inasmuch as the question before us is a new one, for the act of 1889 is a new and important one to our boroughs, we have looked at this Williamsport case carefully. Its facts show: In 1868, Fourth street, the locus in question, abutting Beck, defendant, was graded and paved at public expense. In 1876, Williamsport became a city of the third class, under the act of May 23, 1874. In 1884, an ordinance was passed for the paving of Fourth street, a majority of lot owners petitioning. The pavement was made, and the net cost assessed against abutting owners under clause 32, § 20, act of 1874. On the scire facias, defendant set up the act of May 1, 1876, P. L. 94, which prohibits councils of cities from ordaining the grading or paving of streets, etc., until the city engineer has mapped the property liable, estimated the cost, and the board of viewers viewed the location, and other requirements. Failing to do these things, the ordinance would be void. He also averred the re-paving was not an original paving under the act of 1874. The case was tried upon these questions, no charge of the court below appearing in the report, but only the points. The defendant's fourth point related to the act of May 1, 1876, not being complied with, and the verdict must be for the defendant. This was affirmed. This affirmance, itself, defeated the plaintiff. The fifth point recited the street had been a highway; was paved by Williamsport in 1868; that the re-paving was necessary; "that such re-paving is not an original paving within the meaning of the 32d clause of § 20, act of May 23, 1874, hence the cost cannot be assessed to the property holders abutting." This was also affirmed. Either the act of 1876 or 1874 would

defeat the plaintiff. We now look at the clause of the act of
1874 referred to. It reads, "cause to be graded, paved or mac-
adamized any public street, which is now or may hereafter be
laid out and opened in any of the cities," etc. Then it pro-
ceeds to provide for the collection of the expense from lot
owners and the assessment by foot front, and other details.
Brushing aside, for our purpose, the act of 1876 and reading
the fifth point on the trial, which raised the question of the re-
paving in 1885 of Fourth street, paved originally at public ex-
pense in 1868, we may find warrant for the principle stated in
the syllabus to have been decided. The answer to this point
was the ninth assignment of error. While the answers to the
other points were formally approved by Justice STERRETT's
opinion, this ninth assignment seems to have been discussed
on the general principles of Hammett's case. We find no ref-
erence in this opinion to the acts of 1874 or 1876, which were
so prominent on the trial. The affirmance, then, of this judg-
ment on the general principles of Hammett's case must apply
them to the questions raised on its trial. We must, therefore,
since this Williamsport case, accept it as the law that where
pavements have been originally made in the old built-up portions
of our cities and towns, and kept up at the public expense a
re-paving cannot be charged to the abutting lot owners. We
now interpret that case as so deciding, and, if we are in error,
we may be corrected.

We can see much reason and justice in the decision. Where
the main thoroughfares of our Pennsylvania boroughs have had
the customary pavements constructed and kept up from year
to year at the public expense, the lot owners, having, through-
out that long period, contributed an amount of tax, for the pur-
pose, that approaches if not exceeds the cash value of their
lots, it would not seem equitable to suddenly take a new de-
parture, and tear up the old pavement for a new and more ex-
pensive one to be paid for by the lot owners, when it is for the
general advantage and accommodation of the whole munici-
pality. A careful reading of the act of 1889, which says, speak-
ing of councils, "shall have the power, . . . . . and cause to
be paved, curbed or macadamized, . . . . . any public street or
thoroughfare, or parts thereof, which is now or hereafter may
be laid out or opened in any of said boroughs," recalls almost

Arguments.

the precise language of the act of 1874, which was in question in the Williamsport case. When the expression is used, "any public street or thoroughfare which is now or hereafter may be laid out or opened in any of said boroughs," it seems to indicate that the legislative intent was to authorize this, in the newer portions of the boroughs, or in the parts that had not already been paved. Following, however, the authority of Williamsport v. Beck, if it should appear on the trial of this case that the street fronting on the defendant's property has been paved by macadamizing originally at public expense and so kept up, and that this is in the old, well-built-up portion of the town, the plaintiff cannot recover. We decide the question thus distinctly, so there may be an expeditious final determination of the matter.

And now, July 31, 1890, rule for judgment discharged.

—Thereupon the plaintiff took this appeal, specifying that the court erred:

1. In holding that the allegations of fact quoted from the affidavit of defence were sufficient, if true, to defeat the plaintiff's recovery.

2. In the portion of the opinion printed supra.

3. In discharging the plaintiff's rule for judgment.

*Mr. Vin. E. Williams* (with him *Mr. Wm. A. Griffith*), for the appellant.

Counsel cited: Huidekoper v. Mead'ville City, 83 Pa. 156; Alcorn v. Philadelphia, 112 Pa. 494; Williamsport v. Beck, 128 Pa. 147; Reed v. Erie City, 79 Pa. 346; Michener v. Philadelphia, 118 Pa. 535; Wistar v. Philadelphia, 80 Pa. 505; Keith v. Philadelphia, 126 Pa. 575; Harrisburg v. McCormick, 129 Pa. 213; Orphan Asylum's App., 111 Pa. 144.

*Mr. H. P. Laird* (with him *Mr. J. B. Keenan*), for the appellee.

That the act of April 23, 1889, P. L. 44, did not interfere with the provisions of the borough charter, counsel cited: Brown v. County Com., 21 Pa. 37; Evans v. Phillipi, 117 Pa. 226; Seifried v. Commonwealth, 101 Pa. 200; Bounty Accounts, 70 Pa. 92; Kilgore v. Commonwealth, 94. Pa. 495. That the said act was unconstitutional: Philadelphia v. Had-

Statement of Facts.

dington M. E. Ch., 115 Pa. 291.; Ayars' App., 122 Pa. 266; Berghaus v. Harrisburg, 122 Pa. 289; Frost v. Cherry, 122 Pa. 417.

PER CURIAM:

Assuming, as we are bound to do, that the facts are as stated in the affidavit of defence, we are of opinion that the case must go to a jury. There are some interesting questions involved, which can be better discussed later on.

Appeal dismissed, at the costs of the appellant.

