## Leake et al., Appellants, v. Phila. et al.

*Injunction—Paving—Repairs—Street railways—Ordinance.*

The refusal of the court to grant a preliminary injunction to restrain a contract for paving in Philadelphia, was affirmed in a case where the street was occupied by a condemned macadamized turnpike and by a street railway which had paved the centre of the street, the contract also providing for keeping the street in repair for three years—the court below holding that the macadamizing and voluntary paving by the railway company was not an original paving "by the owners of the property," under the ordinance of April 1, 1859, so as to make property owners liable for the paving ordered by the city.

Argued March 28, 1892. Appeal, No. 82, Jan. T., 1892, by plaintiffs, E. F. Leake et. al., from decree of C. P. No. 4, Phila.

Co., March T., 1892, No. 783, dismissing motion for prelimi-
nary injunction, against the city of Phila. and the Vulcanite
Paving Co.　Before PAXSON, C. J., GREEN, WILLIAMS, McCOL-
LUM, MITCHELL and HEYDRICK, JJ.

Bill for injunction by property owners and taxpayers to re-
strain the city of Phila. and the Vulcanite Paving Co. from
entering into a contract for paving.

The bill alleged that plaintiffs were taxpayers and owners
of real estate fronting on Frankfort avenue, Phila.　An ordi-
nance of March 11, 1891, authorized the paving of said street
in front of plaintiffs' property and the collection of the cost
from abutting owners, except for intersections, the cost of
which was to be paid out of general taxation, the contractor to
keep the street in repair for three years.　That the contract was
awarded to the Vulcanite Paving Co., and a contract was about
to be signed.　That the bid contained a sum for cost of keep-
ing street in repair.　That the Frankford and Southwark City
Passenger Railway Co. was authorized, by acts of April 4,
1854, P. L. 759, June 9, 1857, P. L. 802, and April 9, 1858,
P. L. 237, to construct a railroad upon Frankford avenue
where it was now proposed to pave.　That said railway com-
pany filed a written acceptance of the ordinance of July 7,
1857, whereby it became liable for the costs of maintaining,
paving, repairing and repaving said street.　That about 1858,
said railway company tore up the macadam pavement then
existing on said street, laid its tracks and paved with cobble
stones for the space of eighteen feet in width.　That said rail-
way had repaired and kept said paving in repair and had also
repaired the macadam road, and entered into a contract with
the Frankfort & Bristol Turnpike Co. (whose franchise covered
said street, under the act of March 24, 1803) to keep the street
in repair from curb to curb.　That the city in 1888 had entered
bond, duly approved, for payment of damages for taking fran-
chises of said turnpike.　That the ordinance and contract relat-
ing to this paving was illegal and void.　The prayers were for
an injunction restraining (1) paving, (2) filing claims and col-
lecting cost from property owners, (3) paying cost of inter-
sections out of city funds, and (4) further relief.　The bill was
supported by injunction affidavits.

The Vulcanite Paving Co. filed an affidavit denying that there was any increase in the contract price to cover cost of keeping street in repair.

The city filed an affidavit alleging that the ordinance of 1857 was modified by the ordinance of April 1, 1859, so that street railways were not liable for original paving; that the property owners contributed nothing to the paving already done, and that the proposed paving was a first paving under the ordinances of the city.

The ordinance of April 1, 1859, after repealing so much of the ordinance of 1857 as required railway companies to pave streets occupied by them which had not been paved, provided, in § 2: "All streets or highways which are unpaved at the time of laying the rails shall be kept in good traveling order by the railroad company until the same shall be paved by the owners of property thereof, after which they shall be repaired and kept in good order at the proper cost of the railroad company occupying the same."

A motion for a preliminary injunction was dismissed by the court and the injunction refused in the following opinion by. WILLSON, J.:

" The plaintiffs, who are taxpayers and owners of real estate fronting on Frankford avenue, filed a bill in this case to prevent the city from entering into a contract with its co-defendant, the Vulcanite Paving Co., for the paving of the said Frankford avenue from Margaret to Adams streets, and to prevent that company from doing the work and filing municipal claims therefor.

" An ordinance of March 11, 1891, provided that the paving should be done, and that the contractor should collect the cost of the same from the owners of the property fronting on the street, as well as enter into an obligation to keep the street in good repair for three years after the work should be finished. The Vulcanite Paving Co. were the successful bidders for the contract.

" The principal ground upon which the plaintiffs' case is rested is that the Frankford & Southwark Phila. City Passenger Railway Co., which occupies the said street in part by its tracks, is legally bound to do all necessary paving and repaving there at its own expense, and without expense to the tax-

payers of the city or to the owners of property fronting on the highway.

"It is undoubtedly the fact that an act of assembly, (P. L. 1857, p. 802,) supplementary to the act incorporating the company (under its original name of the Phila. & Delaware River Railroad Co.) provided that the corporation should obtain the consent of the city councils before using or occupying any of the streets named in the act ; and, further, that such consent should be taken to be given unless said councils should signify their disapproval by ordinance within thirty days from the passage of the act.

"It is also true that councils, in a general ordinance of July 7, 1857, required all passenger railway companies within the limits of the city to enter into a written obligation to comply with the provisions of the said ordinance, one of which was that such companies should be at the 'entire cost and expense of maintaining, repairing and repaving that may be necessary upon any road, street, avenue, or alley occupied by them.' The 9th section of the ordinance provided, that if the said railway company, viz.: the Phila. & Delaware River Railroad Co. (that being the original name of the Frankford & Southwark Phila. City Passenger Railway Co.) should fail to file such an obligation on or before the 8th day of July, 1857, the said councils expressed their disapproval of the before-mentioned act of assembly. On the 8th day of July, 1857, the railway company did file the prescribed obligation with the city solicitor.

"Doubtless the right of the railway company to build and operate its road then became subject to all the burdens which were imposed by the ordinance referred to. If there were nothing else in the case but the matters which have thus been briefly detailed, it would be well worth while to consider whether, under such circumstances, the city could lawfully impose either upon taxpayers or property-owners the burden of paying for any necessary paving or repaving of the street in question, without making the proper effort to impose that duty upon the railway company.

"There is, unquestionably, good reason for the common opinion that such corporations should make a large return to the public for the valuable franchises which they enjoy in the use of the public highways, and where the law imposes upon

them the duty of either paving, repairing or repaving the streets, when that is necessary, as a part of the consideration which the public should receive for the grant of the privileges enjoyed, it is eminently proper that the performance of that duty should be exacted, so that both' taxpayers generally and abutting owners of property may be relieved of a tax to which the law subjects the railway corporation.

" It is plain, however, that in every such case the question must arise, What does the law require of the railway company? In the case before the court, it appears, from what has been stated, that the railway company became bound, by the terms of its obligation and of the ordinance of 1857, to bear the entire cost of paving that might be necessary upon any street occupied by it. That was its original duty. Is the duty of the company the same at the present time?

" To settle that question we must proceed a step further. On April 1, 1859, an ordinance, supplemental to that of 1857, was approved, which materially modified the requirements of the latter in regard to the paving of streets occupied by passenger railway companies. The 2d section is as follows: ' That all streets or highways which are unpaved at the time of laying the rails shall be kept in good traveling order by the railroad company, until the same shall be paved by the owners of property thereof, after which they shall be repaired and kept in good order at the proper cost of the railroad company occupying the same.' And the 15th section reads thus: ' That so much of the 3d section of the ordinance approved July 7, 1857, to which this is a supplement, as provides that the railroad companies shall pave any street that has not heretofore been paved, be and the same is hereby repealed.'

" It is obvious that the latter ordinance was intended to make it clear that the municipality would not put the cost of the first paving of a street on the passenger railway company. Whatever obligation, therefore, the particular company in question was under to pay the cost of first paving prior to April 1, 1859, that was removed by the ordinance of that date, unless there is some reason why the ordinance does not inure to the benefit of the company. I am not able to discover any such reason. Indeed, in my judgment, all doubt upon that point should be regarded as out of place in view of the case of the

city of Phila. v. Evans, 48 Leg. Int. 58 [s. c. 139 Pa. 483]. There an effort was made to collect a municipal claim for the paving of the middle portion of Girard avenue, which had been occupied by market houses. One ground of defence was that it was the duty of the passenger railway company occupying the street to pay for the paving. That company by the terms of its act of incorporation, was made subject ' to the provisions of all ordinances heretofore or that may be hereafter passed by the councils of the city, regulating city passenger railways.' It is to be taken as a fact that the company entered into the same sort of obligation to comply with the provisions of the ordinance of 1857 as that which was entered into by the railway company occupying Frankford avenue. Such an obligation was required by that ordinance, and it is to be presumed that it was given.

" The act of 1857, relative to the railway company involved in the present case, enacted that ' said councils may from time to time by ordinance establish such regulations in regard to said railway as may be required for the paving, repaving, grading, culverting and laying of water and gas-pipes along said streets, and to prevent obstructions thereon.'

" Plainly, the ' regulations' were to be such as should be ' required ' or imposed by the city. In the exercise of its discretion and judgment over such matters, the city has prescribed its regulations by general ordinances, applicable to all passenger railway companies. In the absence of some sufficient controlling reason for making a distinction among them, such companies should be treated alike.

" I am not able to perceive that there is any radical difference between the position or obligation of the company occupying Girard avenue and that occupying Frankford avenue. In the Evans case, just referred to, the Supreme Court ruled that the repealing ordinance of 1859 operated in favor of the Girard Avenue Company and relieved it from the burden of paying the cost of the first paving, which was at issue in that case. It seems to me that I am bound, not only by sound reasoning, but by the authority just mentioned, to apply the same rule to this case.

" The whole subject was committed by the law to councils. The act of incorporation imposed no specific requirements in regard to paving upon the company in question. Councils at

first imposed a rigorous condition in general terms, applicable to all railway companies, which condition it shortly afterward modified to a degree by another general ordinance. I see no ground for questioning the power of councils to do this.

"There is nothing in the case of Frankford & Southwark Phila. City Pass. R. W. Co. v. City, 43 Leg. Int. 338, which militates against this view, if the case is analyzed, notwithstanding certain language in the opinion of the court, which, if taken literally, would indicate that the company was liable for the cost of paving. The case involved only the question of the duty of the company to repair or repave, as to which there can be no doubt, and the language of the opinion must be understood as applying to that question alone.

"It is, then, my conclusion, that the passenger railway company occupying Frankford avenue, after April 1, 1859, was not bound to meet the expense of the first or original paving of that highway—such paving as the ordinance of 1859 intended not to require of such companies.

"But is the paving which the city proposes to have done by the Vulcanite Company of that description? It is claimed on behalf of the plaintiffs that it is not. First, because the highway referred to was macadamized prior to 1857 by a turnpike company, which had franchises in it and collected tolls for the use of it; and, second, because the railway company, for its own convenience, paved the middle eighteen feet of the avenue with cobble-stones 'about the year 1858,' and has kept the same and the macadam road in repair ever since.

"As to the first of these contentions, I may say that I do not regard a macadam road as paved, in the meaning of the term as it has been employed in the statutes and ordinances applicable to this city. Such a road is artificial, improved, it may be, but not paved in the technical or natural sense of the word.

"The act of March 25, 1805, 4 Sm. L. 232, authorized councils to make ordinances for 'laying with broken stone or graveling any of the streets' within the city, and provided that after the cartway was formed, the owners of adjoining lots should be obliged to form their respective footways of hard substances or gravel. By the act of April 23, 1829, P. L. 301, authority was given to councils to require the streets to be paved at the cost of the owners of the adjoining properties, and a series of

statutes followed, under which a vast deal of paving with substances imposed bodily upon the surface of the streets has been done. A clear distinction has been recognized between a mere artificial road-bed and a paved road-bed. This was expressly stated in the act of April 1, 1864, P. L. 187, in which it was provided that, upon the petition of a majority of the owners of the ground on any of the streets in certain wards not already paved, councils might direct that the said streets 'shall be macadamized in a suitable manner, instead of being paved.' Four years later the act of March 13, 1868, P. L. 316, also extended the provisions of prior statutes, authorizing the owners of a majority of feet upon any street to have the same paved, to macadamizing or turnpiking streets in the rural wards of the city. This distinctly marked the difference between paving and macadamizing.

" In view of this summary of legislation, it can hardly be urged that the framers of the ordinance of 1859 intended to cover a macadam road under the term paved, when it repealed the requirement that railroad companies should pave any street that had not theretofore been paved.

" Alcorn v. Phila., 112 Pa. 494, also bears upon this point, and appears to sustain the views already expressed. That case related to the right of the city to recover from the property-owners the expense of paving a strip in the middle of Broad street, which had been left unpaved when Belgian blocks were laid down. It was alleged that the strip had been macadamized, but the Supreme Court said: 'Whether the alleged macadamizing was paid for out of the moneys of the city or by voluntary contributions is as immaterial as would be the question, had the ground been occupied for a market, who paid for the market house?'

" It seems to me that the other contention is equally groundless. The voluntary paving of a portion of the street by the railway company was not such a paving as the ordinance of 1859 had in view when it relieved such companies of the expense of original paving, and imposed upon them the burden of keeping the streets in good traveling order ' until the same shall be paved by the owners of property thereon,' and thereafter of repaving and repairing the streets. See § 2 of the ordinance. The prior paving, which was to be the basis of the

city's right to require the railway company to pay the expense of repaving must be regarded as paving done either at the public cost or at the expense of the property-owners. It would be an unreasonable interpretation of the ordinance which would subject the company to the expense of an entirely new pavement for either the whole or a part of the width of the street, simply because it had voluntarily paved a portion of it and maintained it for its own advantage, but doubtless to the convenience of the public as well. If it was not bound to pave that portion of the street, it is difficult to see how its voluntary act could have created any greater liability than would otherwise have existed. If that paving had been done at the cost of the city or the property-owners, I should regard the point taken as meritorious—at least, to the extent of so much of the proposed contract as would cover the portion of the street so paved. The fact, however, being different, I cannot perceive any merit in the position.

" But one other subject requires attention. The plaintiffs object to the proposed contract, on the ground that it requires the Vulcanite Co. to keep the street in repair for three years, and they say that the property-owners cannot be charged with the expense of repairs. It is claimed that a part of the contract price covers this cost.

" Upon an application for a preliminary injunction, it would probably be sufficient to say that the denial in the affidavit of Dr. Filbert that there was any increase in the contract price because of repairs must be taken as conclusive, for the purposes of this hearing, upon that point.

" But, further, it may be said that it has long, perhaps invariably, been the practice in this city to provide in such contracts that the contractor should keep the streets paved in repair for a given period of time. This may be regarded, not as providing for repairs in the ordinary sense, but for the thorough and complete execution of the work required to be done—a result which might reasonably demand the rectification of defects which could not be foreseen or provided against in the prosecution of the work. This is the view which I take of the matter. Even if I held a different opinion, I should not deem it proper, in an application of this character, to discredit this long established system of municipal management of such

matters.　I see no reason why, if the point be well taken, the property-owners could not take advantage of it, *pro tanto*, in resisting the collection of the claims which may be filed."

*Errors assigned* were (1) dismissing motion, and (2) refusing injunction.

*Robert Alexander*, with him *Edward W. Magill* and *George W. Shoemaker*, for appellants, cited Hammett v. Phila., 65 Pa. 146; Pittsburgh Orphan Asylum, 111 Pa. 135; Williamsport v. Beck, 128 Pa. 147; Huidekoper v. Meadville, 83 Pa. 156; Greensburg v. Laird, 138 Pa. 533; Frankfort & Southwark Ry. v. Phila., 17 W. N. 245; Phila. v. Ridge Ave. Ry., 28 W. N. 388; Phila. & Gray's Ferry Ry. v. Phila., 2 W. N. 639; Chicago v. Sheldon, 76 U. S. 50.

*Charles B. McMichael, Charles F. Warwick* with him, for appellees, cited cases relied upon by court below, and Phila. v. Glenwood Cemetery Co., Pa. S. C., Jan. T., 1872, No. 245, unreported, to the effect that turnpike was not first paving.

*M. Hampton Todd*, for Vulcanite Paving Co.

Per Curiam, June 1, 1892.

The decree is affirmed, and the appeal dismissed at the costs of the appellants.