# Philadelphia to use of John M. Mack *v.* William Eddleman, Appellant.

*Road law—Streets—Pavement—Original paving.*

No particular material is necessary to constitute a pavement. It may be made of anything which will produce a hard, firm, smooth surface for travel.

A first pavement which, in the legal sense, exempts the abutting property owner from liability for any subsequent improvement may be defined generally as one that is put down originally, or adopted or acquiesced in subsequently by the municipal authority for the purpose, and with the intent of changing an ordinary road into a street. If the purpose and intent be wanting, a mere surfacing of the road, however carefully or expensively done, will not be a paving; but if the intent and purpose are present, or can be fairly inferred, then there is paving, whatever the material may be.

*It seems* that, prima facie, macadamizing is not street paving in large cities, while on the other hand there may be a presumption the other way in smaller cities or towns.

Mere maintenance as a highway, and repairs and repavings for the purpose of such maintenance, are not sufficient to indicate municipal recognition of the highway as a street.

An affidavit of defense to a municipal claim for paving is insufficient to prevent judgment, which merely avers that the road was macadamized by a turnpike company in 1811, so maintained until it was acquired by the city in 1873, and that since 1873 the city "has maintained the said road or turnpike as a public highway, and has repeatedly repaired and repaved the same with macadam."

Argued March 27, 1895. Appeal, No. 94, Jan. T., 1895, by defendant, from order of C. P. No. 1, Phila. Co., Dec. T., 1891, No. 504, M. L. D., making absolute a rule for judgment for want of a sufficient affidavit of defense. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

Scire facias sur municipal lien.

Defendant filed an affidavit of defense which was as follows:

"Plaintiff has filed a lien against my property, situate on Ridge avenue, Roxborough, for the paving of the roadway, on said Ridge avenue in front thereof, and said lien is the subject-matter of above suit.

" Said paving was with what is called Belgian blocks, and is not the original paving of said Ridge avenue, but is the repaving thereof, and I am advised by my counsel that my property is not liable to a lien for a repaving of the street in front thereof.

" By an act of assembly, approved March 20, 1811, the governor of Pennsylvania was authorized to incorporate a company to construct and maintain a road of stone, known as a macadamized road, beginning at the intersection of Tenth and Vine streets, Philadelphia, and thence to Perkiomen bridge, in Montgomery county, Pennsylvania.

" That in accordance with said act of assembly such a company was duly incorporated, and said company or corporation constructed such a road and paved the same with macadam, constructing an artificial roadbed with the said macadam paving, in front of my property aforesaid.

" The said company, called the Ridge Avenue Turnpike Company, maintained the said road or turnpike, with such macadamized pavement from that time until the year 1873.

" That in the year 1873, the city of Philadelphia acquired the said road or turnpike with its macadamized road or bed.

" That since the year 1873, the said city of Philadelphia has maintained the said road or turnpike as a public highway, and has repeatedly repaired and repaved the same with macadam, in front of my said property.

" That in the year 1890, the contractor, who has filed the above lien, the plaintiff in this case, tore up the said macadam pavement and repaved the said street in front of my property with stone."

The court made absolute a rule for judgment for want of a sufficient affidavit of defense.    Defendant appealed.

*Error assigned* was above order.

*John Dolman,* for appellant.—In the case of Hammett v. Philadelphia, 65 Pa. 146, this court decided that the abutting properties on a street were not liable to a tax for the cost of repaving the street, but only for an original paving.

In the case of City of Harrisburg v. Segelbaum, 151 Pa. 172, two new questions were decided, which were not raised in

Hammett v. City: First. That it did not make any difference at whose cost the original paving was done, but if there was an original paving, and the paving under consideration was a repaving, the abutting property was not liable for its cost. Second. That macadamizing was paving within the meaning of the law.

The case before the court comes directly and clearly within the ruling in the case of City v. Segelbaum.

*E. O. Michener*, for appellee.—The repairs of a street by the city, even if that repair is of so substantial a character as to amount to a repaving, is not a first paving unless ordered by the councils, and surely the most that can be contended for here, under the allegations of the affidavits, is that the street was repaired and repaved without any authority from councils: City v. Dibaler, 147 Pa. 263.

The right of the city to order the paving of its streets, to determine the kind of pavement, the manner of its doing, the terms of the contract, etc., is independent of the property owner's judgment or consent: Philadelphia v. Jewell, 135 Pa. 329 ; City v. Baker, 140 Pa. 11 ; Alcorn v. City, 112 Pa. 494.

OPINION BY MR. JUSTICE MITCHELL, July 18, 1895:

No particular material is necessary to constitute a pavement. It may be made of anything which will produce a hard firm smooth surface for travel. But that with which we are specially concerned in the class of cases to which this belongs, is a pavement which marks the conversion in a legal sense, of a common road into a street, for that is the only kind for which under the settled line of authorities from Hammett v. Philadelphia, 65 Pa. 146, down, an abutting property owner can be compelled to pay. As said by the present chief justice in Harrisburg v. Segelbaum, 151 Pa. 172, "the controlling consideration is not so much whether the prior improvement of Market street by macadamizing was in the strict sense of the word a paving thereof, as whether by said improvement the street was changed from an ordinary clay road into a good, reasonably smooth and substantial artificial highway, practically equivalent to an ordinarily well improved street, paved with cobble stone or other materials then used for paving."

But as on the one hand it is only the first pavement, whatever it be composed of, converting the road into a street, for which the city can charge the property owner, so on the other hand, as the city has the exclusive right to determine in the public interest when, how and with what material such conversion into a street shall take place, it is essential to such a first pavement as shall exonerate the abutting owner from further charge for improvement, that it shall be laid or adopted by the municipal authority.  Not necessarily by formal ordinance declaring the change, for it is not always convenient or even possible to make such documentary proof, but municipal recognition of the pavement of the street, as such, must appear, either by action in the first instance or by acquiescence and adoption subsequently. The other questions which usually arise as to the kind of pavement, whether by wood, or cobble stones or macadamizing or otherwise, and who paid for it, are subordinate, and are only material or relevant as bearing on the main issue of municipal recognition.  They have been treated therefore by this court not as questions of law but as questions of fact whose weight and bearing depended on the other evidence and the circumstances of each case.

There is no conflict in the decisions, but as their exact effect has not always been clearly understood it may be worth while to review them so as to settle any existing doubts.  The cases may for convenience be grouped into those in which wood or macadam was held to be a street pavement, and those in which they were held not to be such pavement.

First. In Alcorn v. Philadelphia, 112 Pa. 494, the point was not directly raised, but was distinctly foreshadowed by the language of TRUNKEY, J. : "There is no evidence that councils did anything in obedience to that provision.  Neither ordinance nor contract is proved.  And the oral testimony is too meager to warrant submission to the jury to find whether the said part of Broad street had been macadamized under and in pursuance of an ordinance of the city," thus implying that if it had been, it would have been a sufficient paving by municipal authority.

In Williamsport v. Beck, 128 Pa. 147, it appeared that the street had been paved with wood by the city under an ordinance, and it was held that a property owner could not be charged for a subsequent pavement, the change to a paved city

street having already been made by the municipal authority, and the question who paid for it being therefore immaterial.

. In Greensburg v. Laird, 138 Pa. 533, the affidavit of defense averred among many other things, that the street in question was a great public thoroughfare, one of the principal streets in the borough, and had been macadamized for many years and for at least thirty had been kept up and repaired at the public expense. This court held that the facts set up were sufficient to go to the jury as evidence of municipal adoption of the macadamized road as a borough street.

In Harrisburg v. Segelbaum, 151 Pa. 172, it appeared that Market street had been a macadamized highway in the central built-up part of the city for more than half a century, and had been kept in repair as such at the corporate expense. The court below declining to say that macadamizing and paving were always identical, nevertheless directed a verdict for defendant on the ground that the whole evidence and circumstances of that case showed it was a pavement under the municipal authority, and this was affirmed.

Boyer v. Reading, 151 Pa. 185, was very similar to the last case. It was a bill to enjoin a contract by the city for an asphalt pavement at the cost of the property owners, averring that the street in question was a street in the built-up portion of the city, maintained as such at the public expense for a hundred years, turnpiked in 1805, and after abandonment by the turnpike company, torn up and reconstructed, "spalled" or macadamized, by the city. The answer admitted the foregoing facts, and that the paving was of the same character as the other streets of the city of Reading. It was held that the property owners could not be charged for the new asphalt pavement.

In Philadelphia v. Ehret, 153 Pa. 1, it appeared by case stated that a strip in the center of Allegheny avenue, then in a suburban district of the city, had been macadamized in 1869 under the authority of an ordinance of councils, and paid for by the property owners. It was held that the owners could not be charged with the cost of a new paving of this strip with asphalt in 1891, when Allegheny avenue was within the built-up portions of the city, with gas and water pipes, sewers, etc. in front of defendant's property.

Secondly ; the class of cases in which macadamizing has been held not to be a street pavement.

In Philadelphia v. Baker, 140 Pa. 11, the claim was for paving with vitrified brick, and the affidavit of defense averred that the street had been macadamized at the cost of the property owners, and " said macadamizing was in the style universally adopted for years past in the twenty-second ward where said property is situated." The court below gave judgment, and it was affirmed on the distinct ground that there was " no ' averment that the city in any way recognized the kind or quality of pavement which the defendant alleges was placed on Miller street."

In Philadelphia v. Dibeler, 147 Pa. 261, at the trial of a claim for paving Woodlands avenue, an old county road, with vitrified brick under an ordinance of councils, defendant offered to prove that the city had previously appropriated a very large sum for the repair of the street, under which a contract for macadamizing had been made and carried out, and further to show the substantial nature of the work done thereunder. The court excluded this evidence, and was sustained on the ground that an appropriation for repairs although extensive and of a reasonably permanent character did not amount to a municipal recognition of the road as a paved street.

Philadelphia v. Hill, 166 Pa. 211, was another claim on the same street, Woodlands avenue, and under the same facts as Phila. v. Dibeler, and was decided on the authority of that case.

Leake v. Philadelphia, 150 Pa. 643, is not unfrequently cited as one of this class of cases, but it simply decided that the court below was right in refusing a preliminary injunction. The subject of paving was learnedly discussed by the court below, but this court as is the usual practice in such cases refrained from passing on the merits of any of the questions involved until final hearing. The case has no material bearing on the present inquiry.

These are all the cases upon the subject, and bringing them thus together in review shows that although they have sometimes led to diverse conclusions on the varying facts and circumstances they are all governed by one single principle, the municipal recognition of a change from an ordinary road to a village or city street. A first pavement therefore, in the legal

sense, which exempts the abutting property owner from liability for any subsequent improvement, may be defined generally as one that is put down originally or adopted or acquiesced in subsequently, by the municipal authority, for the purpose and with the intent of changing an ordinary road into a street. It may be of macadam or of anything else. That is a matter of evidence only. If the purpose and intent be wanting, a mere surfacing of the road, however carefully or expensively done, will not be a paving, but if the intent and purpose are present, or to be fairly inferred, then there is a paving whatever the material may be.

It may perhaps be safely stated as a corollary that, prima facie, macadamizing is not a street paving in Philadelphia or probably in other large cities, while on the other hand there may be a presumption the other way in smaller cities or towns, as indicated in Greensburg v. Laird, Harrisburg v. Segelbaum, and Boyer v. Reading. Some illustrations of the legislative use of the word in relation to paving will be found in the opinion of WILLSON, J., quoted in Leake v. Phila., 150 Pa. 643, 649, 650, and in some of the other cases cited, supra. But Philadelphia v. Ehret, 153 Pa. 1, shows that there is no hard and fast rule on the subject of the kind of paving. It is a question of fact in each case, and the governing consideration is the nature of the municipal action with regard to it. When the boundaries of the city of Philadelphia were made coterminous with the county, by the consolidation act of 1854, certain rural and suburban districts, with their roads, were brought under the municipal jurisdiction. Some of these were mere township roads, while others were main arteries of travel and trade, built up closely for considerable distances so as to be practically streets. Radiating from the old city were several principal thoroughfares such as Moyamensing and Passyunk roads to the south, Frankford, Old York, Germantown and Ridge roads to the north. These the city might continue as ordinary though important and much traveled roads, and keep in repair as such until the proper time should arrive for the change, or on the other hand might recognize or adopt as streets sufficiently well paved for all the requirements of the present or near future. And if the latter course was adopted as to any road or any portion thereof, no matter how or with what material it

was paved, then it became a street as a result of such action, and the future growth of the city, and necessity of a different pavement would not change its character or subject the abutting owners to charge for new paving. The case of Allegheny Avenue, Philadelphia, v. Ehret, 153 Pa. 1, is an illustration of this result.

The present claim is for paving with Belgian blocks a part of Ridge avenue, one of the main thoroughfares above referred to, leading northwest from the old city. The affidavit of defense sets forth that the road was macadamized by the Ridge Turnpike Company in 1811, and so maintained until it was acquired by the city in 1873; and since 1873 the city "has maintained the said road or turnpike as a public highway, and has repeatedly repaired and repaved the same with macadam." There is nothing here to show that Ridge avenue, where appellant's property is situated, has ceased to be a road and become a street, still less that it has become so by municipal action or acquiescence. The Ridge turnpike by the charter of 1811 (P. L. 167) began at Tenth and Vine streets in Philadelphia, and extended to Perkiomen bridge in Montgomery county. In fact it was made to begin at Ninth and Vine. We might assume from our general knowledge of the localities that in 1890 it had certainly become a street at Ninth and Vine, and almost certainly had not become a street at Perkiomen bridge. But its status as a road or a street at the intermediate point in Roxborough does not appear, and the affidavit showing that down to 1873 it was not a paved street, the burden was on appellant to show that its character in that respect had changed. This the affidavit fails to do. Mere maintenance as a highway, and repairs and repavings for the purpose of such maintenance, are all that are averred, and these are not sufficient: Phila. v. Dibeler, 147 Pa. 261.

Judgment affirmed.