# Dick v. Philadelphia.

197    467
200    351

197        467
*Road law—Paving—Original paving—Streets and highways—Munici-*    e 20 SC   482
*palities.*                                                        e 20 SC   484

A first or original pavement of a street in the legal sense, which exempts    197        467
the abutting property owners from liability for any subsequent improve-        32 SC   645
ment, may be defined generally as one that is put down originally, or
adopted or acquiesced in subsequently by the municipal authority for the     197    467
purpose and with the intent of changing an ordinary road into a street.      38SC 1389
It may be of macadam or anything else.  If the purpose and intent be
wanting, a mere surfacing of the road however carefully or expensively
done, will not be a paving, but if the intent and purposes are present, or
it be fairly inferred, then there is a paving whatever the material may be.

*It seems* that macadamizing is not a street paving in Philadelphia, or
probably in other large cities, while on the other hand there may be a
presumption the other way in smaller cities or towns.

Where a turnpike company constructs a plank road on an unimproved
city street, and the governor authorizes the company to collects tolls, on
the report of commissioners that the road was constructed in a competent
and workmanlike manner, and for many years the city takes no action as to
the street, except to free it from tolls, and to regrade it, thereby destroying
the planking, the plank road is not such an original paving as to relieve
abutting owners from payment for a pavement of vitrified brick.

468             DICK v. PHILADELPHIA.

Argued March 22, 1900.    Appeal, No. 53, Jan. T., 1900, by plaintiff, from decree of C. P. No. 4, Phila. Co., sustaining exceptions to referee's report in equity in case of John Dick et al. v. Philadelphia.    Before GREEN, C. J., McCOLLUM, DEAN, FELL and MESTREZAT, JJ.    Affirmed.

Bill in equity for an injunction.    Before ARNOLD, P. J.

The bill in this case was filed by certain owners of property on Woodland avenue, Philadelphia, to restrain the city of Philadelphia from issuing writs of scire facias on municipal claims for paving.    It appeared that under certain ordinances passed in 1894 and 1895, Woodland avenue had been paved with vitrified brick.    The plaintiffs claimed that this was not an original paving for the cost of which they were liable.    By an agreement of the parties the case was referred to Alexander Simpson, Jr., who reported in favor of the plaintiffs, on the ground that a plank road paving constructed by a turnpike company in 1850 was the original paving.    Exceptions to the referee's report were sustained by the court.    The material averments of the bill and the facts of the case sufficiently appear by the opinion of the Supreme Court.

*Error assigned* amongst others was the decree of the court dismissing the bill.

*Henry M. Dubois, J. Howard Gendell,* and *Edwin S. Dixon,* with them *R. Stuart Smith, Samuel F. Clevenger, Francis H. Thole, Dimner Beeber, E. P. Smithers* and *Harold Goodwin,* for appellants.—The paving for which the claims are filed, is not the original paving of the street: Harrisburg v. Segelbaum, 151 Pa. 172; Philadelphia v. Eddleman, 169 Pa. 452; Hammett v. Philadelphia, 65 Pa. 146; Greensburg Boro. v. Laird, 138 Pa. 533; Boyer v. City of Reading, 151 Pa. 185; O'Connor v. Pittsburg, 18 Pa. 187; Phila. v. Field, 58 Pa. 320; Com. v. Baldwin, 9 W. N. C. 233; Com. v. Dickinson, 3 Brewst. 561; Tifft v. City of Buffalo, 82 N. Y. 204; Iron Mountain R. R. Co. v. Memphis, 96 Fed. Repr. 113.

The plaintiffs are entitled to the relief prayed for upon the ground that the claims for the present paving were filed by the city more than six months after the completion of the work: Philadelphia v. Beatty, 9 Pa. Superior Ct. 255; Act of April 16, 1845, P. L. 488, sec. 2.

*James Alcorn,* assistant city solicitor, with him *David Lavis* and *John L. Kinsey,* city solicitor, for appellee.—The road as constructed by the turnpike company in pursuance of the act of April 19, 1850, incorporating it, was not an original paving of the avenue: Philadelphia v. Eddleman, 169 Pa. 452; Leake v. Philadelphia, 171 Pa. 125; Boyer v. City of Reading, 151 Pa. 185; In re Lincoln Ave., 193 Pa. 432.

OPINION BY MR. CHIEF JUSTICE McCOLLUM, Jan. 7, 1901:

This is an appeal from the decree of the court below dismissing plaintiffs' exceptions to the report of a referee in equity proceedings instituted to enjoin the collection of municipal liens for paving, sustaining defendant's exceptions on the question of original paving and dismissing the bill without prejudice to the right of plaintiffs to defend on the question whether the claims were filed in time. The assignments of error are inaccurate in asserting that defendant's exceptions on the question that the claims were filed in time were sustained. The court expressly declined to sustain them. The only objection the plaintiffs are entitled to make is that these exceptions were not dismissed. The referee has stated the facts with great fullness and fairness, and he has attached and reviewed the authorities with learning and ability. His exhaustive statement of the facts and discussion of the law make it unnecessary to consider either in detail. It will be enough to point out wherein he has erred.

By ordinances of March 30, 1894 and 1895, Woodland avenue was paved in front of plaintiffs' respective properties. By supplementary ordinance of December 16, 1896, it was provided that the paving was to be paid for to the contractor out of the general funds of the city, and that the city should file assessment

bills therefor and recover the same to its own use. The street was paved under these several ordinances and the claims were filed against the properties of plaintiffs abutting upon the improvement, but no sci. fas. have been issued thereon.

The bill averred that Woodland avenue was one of the oldest highways in the commonwealth and had often been recognized as a main artery of travel; that the incorporating act of April 19, 1850, authorized the building of a turnpike road thereon in the manner prescribed by the act of January 26, 1849, and that said road was built and approved by the commissioners appointed by the governor in accordance with the last mentioned act; that by the act of May 27, 1863, and the ordinance of December 8, 1869, the city was authorized to take and did take the turnpike road, paying the company therefor, and that the road laid by that company was adopted and acquiesced in by the city as a well paved city street; that after consolidation, gas pipes were laid along the avenue and by numerous ordinances public gas lamps were erected thereon; that by the ordinance of April 19, 1870, the property owners were directed to grade, curb and pave their sidewalks; that by the ordinance of February 6, 1874, the name was changed to Woodland avenue, and that by the ordinance of April 6, 1880, the street was graded to the established grade of the city; that by the ordinance of May 25, 1880, water pipes were laid therein, and by that of November 5, 1883, it was paved between Fiftieth street and Mount Moriah lane, by which said several acts of the city, Woodland avenue had been assimilated to and become a part of the city proper, as a well paved city street, and that plaintiffs could derive no special advantage from any subsequent paving. And finally that the claims for paving were not filed within six months from the time the work was done.

The only ground for equitable interference, namely, the averment in the bill that the city had, by its acts, adopted and acquiesced in the turnpike road as a well paved city street, is found against the plaintiffs by the referee in an irrefutable line of argument. On this point the referee says: " With the original work the city had nothing to do. It was done outside of

the then city limits.    After it freed the avenue from the tolls
and took possession thereof, the evidence fails to show a single
act by the municipality up to the time it regraded the avenue
and thereby totally destroyed the paving.    Hence, if we are to
find municipal adoption or acquiescence, it must be by reason of
some act or acts intervening between the first building of the
road and its being freed from tolls.    That it was a main artery
of travel and was a well built road, are, it is true, circumstances
from which, with the adopting or acquiescing acts, the munic-
ipal intent to adopt or acquiesce may the more easily be inferred.
But the acts must be proved and the circumstances stated will
only aid in establishing the intent when the adopting or acqui-
escing acts are proved.    On the other hand, the paving not be-
ing a municipal act, the rural nature of the locality and the kind
of paving are circumstances requiring that stronger proof of
adoption or acquiescence be shown than would be required in
the case of a more improved system of paving in a closely built
section of the city.    The referee can find no evidence of adop-
tion or acquiescence, in the legal sense, in the fact that from
1850 to 1879 the city did not attempt to disturb the turnpike
company in the exercise of its franchise.    The city was under
no legal obligation to free the avenue from tolls, though empow-
ered so to do by the Act of April 21, 1855, P. L. 264, and her
failure so to do furnishes no argument that she recognized or
adopted the paving.    On the contrary it might fairly be inferred
therefrom that the city thought the time had not arrived when
an ordinary city street was needed on the line of the avenue.
What then are the facts from which it is alleged adoption or
acquiescence may be inferred?    They are (1) that the borough
and afterwards the city laid gas pipes along the avenue, sup-
plied gas to the abutting properties, and from time to time
erected public gas lamps for the purpose of lighting the avenue
at night; (2) a single track railway was laid along the avenue,
whether by municipal consent or not does not appear; (3) the
city, at the compulsion of two citizens, under the provisions of
the act of March 22, 1865, notified the property owners to grade,

curb and pave their sidewalks, and did the work itself, filed liens therefor and pressed them against the abutting owners who failed to comply with the notice thus given, and (4) it changed the name of the avenue, and placed sign boards thereon showing the changed name. No other evidence was offered which it is even alleged tended, during the period named, to show municipal adoption of the paving, and there is no evidence but that all these things are commonly done by the city with relation to its unpaved streets. From them the referee cannot find an adoption or acquiescence in the paving. None of them relates in any way to it. The only act of the city relating to the paving was the act resulting in its destruction. It is true that during all this time, and while the other improvements were progressing, Woodland avenue in one sense was being assimilated with the other streets and highways of the city, but so was every unpaved road crossing those streets. How then could that fact militate towards an adoption of or acquiesce in the paving? It was strongly argued that, if the city does nothing with a paving but treats the street as it does paved city streets, that is a recognition of the street as a city street, and an acquiescence in the paving thereon. But that argument so far as applicable to this case, puts the city in the position of being bound if she did anything, and of likewise being bound if she did nothing. Vacation of the avenue as a highway apparently would have been her only safety. The difficulty of plaintiff's contention is, that nothing is shown either of omission or commission that might not have occurred on any paved or unpaved highway or street within the city limits. This effect was frankly admitted by counsel who said the city must do nothing on the street or must disaffirm the presumed intent to adopt before she does. Necessarily to avoid the argument she must keep on disaffirming at every step in her progress. And though she does that she would doubtless be met as she has been here in relation to the macadam paving of 1884, with the averment that what she does, not what she says, is the criterion. The law imposes no such necessity upon her." This

portion of the opinion of the referee based on his distinctive findings of fact, should have been conclusive on the question of the original paving. But the referee mistakenly supposes that the action of the legislature in authorizing the construction of the turnpike and afterwards accepting it, is equivalent to municipal adoption. This conclusion is at variance with our decisions. It is enough to refer to Philadelphia v. Eddleman, 169 Pa. 452, decided in 1895, to show that the governing consideration is the municipal action. After collecting and reviewing the cases at length, Mr. Justice MITCHELL there says: " These are all the cases upon the subject, and bringing them thus together in review, shows that although they have sometimes led to diverse conclusions on the varying facts and circumstances, they are all governed by one single principle, the municipal recognition of a change from an ordinary road to a village or city street. A first pavement, therefore, in the legal sense, which exempts the abutting property owners from liability for any subsequent improvement, may be defined generally as one that is put down originally or adopted or acquiesced in subsequently by the municipal authority, for the purpose and with the intent of changing an ordinary road into a street. It may be of macadam or anything else. That is a matter of evidence only. If the purpose and intent be wanting, a mere surfacing of the road, however carefully or expensively done, will not be a paving, but if the intent and purposes are present, or to be fairly inferred, then there is a paving, whatever the material may be. It may perhaps be safely stated as a corollary that prima facie macadamizing is not a street paving in Philadelphia, or probably in other large cities, while on the other hand there may be a presumption the other way in smaller cities or towns, as indicated in Greensburg v. Laird, Harrisburg v. Segelbaum and Boyer v. Reading. Some illustrations of the legislative use of the word in relation to paving will be found in the opinion of WILSON, J., quoted in Leake v. Philadelphia, 150 Pa. 643, 649, 650, and in some of the other cases cited, supra. But Phila. v. Ehret, 153 Pa. 1, shows that there is no hard and fast

rule on the subject of the kind of paving. It is a question of
fact in each case, and the governing consideration is the nature
of the municipal action with regard to it. When the boundaries
of the city of Philadelphia were made coterminous with the
county, by the consolidation act of 1854, certain rural and sub-
urban districts with their roads, were brought under the munic-
ipal jurisdiction. Some of these were mere township roads,
while others were main arteries of travel and trade, built up
closely for considerable distances so as to be practically streets.
Radiating from the old city were several principal thorough-
fares, such as Moyamensing and Passyunk roads to the south,
Frankford, Old York, Germantown and Ridge roads to the
north. These the city might continue as ordinary though im-
portant and much traveled roads, and keep in repair as such
until the proper time should arrive for the change, or, on the
other hand, might recognize or adopt as streets sufficiently well
paved for all the requirements of the present or near future.
And if the latter course was adopted as to any road or any
portion thereof, no matter how or with what material it was
paved, then it became a street as a result of such action, and
the future growth of the city and necessity of a different pave-
ment would not change its character or subject the abutting
owners to a charge for new paving. The case of Allegheny
Avenue (Phila.) v. Ehret, 153 Pa. 1, is an illustration of this
result." Alcorn v. Philadelphia, 112 Pa. 494, is not an author-
ity for the position taken by the referee. The legislative di-
rection there was that the municipality should pave, but so
important and controlling is the question of municipal intent
that although the paving was done, it was not considered an
original paving, because not shown to have been done under
the authority of the statute. If done under that authority it
would have been done by municipal action. There was no
question but that the paving was of a permanent and substan-
tial character. It lacked only the controlling consideration of
municipal action, but lacking that it failed of exemption from
liability for future municipal assessment for paving. We think

the referee also erred in finding that the planked roadway of the turnpike constituted a "reasonable, smooth and substantial artificial highway practically equivalent to an ordinarily well paved street paved with cobble stones or other materials then used for paving." It was not shown that streets were at that time paved with plank, and while such planking might constitute a "reasonably" smooth highway, it certainly would not be "substantial" in the sense of our decisions, in the absence of evidence that streets were so paved. It was not, therefore, "practically equivalent to an ordinarily well improved street."

Decree affirmed and bill dismissed without prejudice, etc.