Erie's Appeal.

Argued March 12, 1931.  Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SCHAFFER and MAXEY, JJ.

*T. P. Dunn,* with him *J. B. Held, Henry MacDonald* and *Samuel L. Gilson,* for appellant.—The decisions have required the abutting property owner to show, in order to prevent an assessment, (a) a suitable original pavement, and (b) affirmative councilmanic acknowledgment of it as such: Phila. v. Muller, 293 Pa. 360; Phila. v. Burk, 288 Pa. 383; Harrisburg v. Funk, 200 Pa. 348; Phila. v. Eddleman, 169 Pa. 452; Wilson Boro. v. Eichlin, 98 Pa. Superior Ct. 188; Phila. v. Shallcross, 95 Pa. Superior Ct. 435; Phila. v. Wells, 94 Pa. Supe-

rior Ct. 512; Phila. v. Scholl, 68 Pa. Superior Ct. 404; York v. Holtzapple, 67 Pa. Superior Ct. 596.

*Charles P. Hewes,* with him *P. Vincent Gifford* and *English, Quinn, Leemhuis & Tayntor,* for appellee.—The pavement put down by the Kahkwa Park Realty Co. was an original, complete and permanent pavement.

The work done by the city in pursuance of its ordinance was merely repairing a completed and permanent paving: Phila. v. Scholl, 68 Pa. Superior Ct. 404; York City v. Stauffer, 53 Pa. Superior Ct. 581; Williamsport v. Beck, 128 Pa. 147; Williamsport v. Hughes, 21 Pa. Superior Ct. 443.

OPINION BY MR. JUSTICE SIMPSON, November 23, 1931:
The City of Erie appeals from an order of the court below sustaining exceptions to the report of a jury of view, and deciding that the city, and not the abutting properties, was liable for the cost of certain paving work done on Kahkwa Boulevard. The decision is right.

Originally the boulevard was part of a tract of land belonging to a development company, and had been graded, curbed and paved in a substantial and suitable manner at the expense of the abutting owners. After the tract became part of the city, the development company conveyed to the city the bed of the streets, including the boulevard, by a deed which stated that "This conveyance is made to the [city] for the purpose of having said streets accepted, dedicated and used as public streets of the City of Erie." The deed was accepted by the city under the authority of a municipal ordinance.

For more than six years after the boulevard became a public street of the city, no work was done upon the pavement, despite unusually heavy traffic over it, though the city officials knew repairs were needed, and were told how they should be made. The result was that it fell into a serious state of disrepair. Subsequently the city ordered the work done which resulted in the present dis-

pute. As testified to by the city's chief paving inspector, it consisted of taking the "loose material out of the base course," "levelling up with bituminous concrete the portion of the street that had fallen into decay, and covering it with an asphalt top." It is evident from this brief statement, and the court below, from all the evidence, found as a fact, that what the city did was not to construct a new and original pavement, but to repair one that, through her neglect, had "fallen into decay." There was ample evidence to sustain this finding. But, says the city, "repair implies the existence of the thing repaired." Of course it does, but here the existing thing that was repaired was the pavement laid by the developing company on a highway later accepted by the city as a public street, with the resultant duty to keep it in reasonable repair, as in the case of all public streets, and for a failure of which duty the city might become liable in damages to those injured by reason of such neglect.

Who then was liable for the repair? Appellant admits, compelled thereto by Hammett v. Phila., 65 Pa. 146, 156, that "Repairing streets is as much a part of the ordinary duties of the municipality—for the general good—as cleaning, watching and lighting. It would lead to monstrous injustice and inequality should such general expenses be provided for by local assessments." Many other cases hold likewise, and no different conclusion, so far as we are advised, has ever been reached by any Pennsylvania court. Appellant avers, however, that in order to prevent an assessment for the paving done in front of an abutting property, its owner must show that there had been previously laid a suitable original pavement, and that the municipality had recognized it as such. This is so whenever the paving for which the assessment is imposed, is alleged by the property owner to be a second and not an original paving of the street; but no such requirements exist where, as here, the work done was merely the repair of an existing pavement, whether it was an original or other paving; and this is

so even though it was not laid by the municipality. Any other determination would compel the manifestly absurd conclusion that a municipality could not, *in fact,* repair a pavement which had not been accepted by it as such an original pavement as would debar the filing of liens for an entirely new paving of the street.

The order of the court below is affirmed at appellant's cost.

DISSENTING OPINION BY MR. JUSTICE MAXEY:

The pavement laid by the realty company was not a municipal pavement. This court has never deviated from the proposition expressed in many cases that "the controlling consideration [in determining whether a pavement is a municipal pavement] is affirmative municipal intention": Phila. v. Muller, 293 Pa. 360; Phila. v. Eddleman, 169 Pa. 452. The court below with entire correctness said on this point, "That the pavement was adopted as such by the city is more than doubtful. It was not adopted by resolution or ordinance of council and the language of the deed by which the city took title to the streets is insufficient to impute municipal recognition of the pavement as such. Nor is there positive evidence of subsequent acquiescence from which adoption might be inferred. The city did nothing, and a passive policy of neglect for the period of six years cannot be construed as acquiescence or adoption. 'The authorities are clear that in itself the taking over a turnpike road is not such an adoption by a municipality as to make the surfacing then in existence come within the legal meaning of an original paving': Phila. v. Eddleman, supra; Dick v. Phila., 197 Pa. 467; Phila. v. Hafer, 38 Pa. Superior Ct. 382."

The court's finding of no municipal adoption of the pavement should logically have led to the sustaining of the exceptions. But the court departed from the path of logic and said: "We believe that what the city did

was not to construct a new pavement but to repair the old, and a city cannot assess property for the cost of repairs": Williamsport v. Beck, 128 Pa. 147. If the city had never adopted the old pavement there was in contemplation of law no old pavement to be repaired.

The work done by the city on the Kahkwa Boulevard was not a repair job either in law or in fact. In law, that pavement as a municipal pavement never existed. "Repair implies the existing of the thing repaired": Gulf City Street Railway and Real Estate Co. v. Galveston, 7 S. W. 520. To call this a repair of an existing pavement is begging the question. It assumes that the "pavement" being "repaired" was a municipally accepted pavement, which it was not. Neither was there in any correct factual sense a repair job. The word "repair" nowhere appears in the ordinance authorizing this work. The entire ordinance from beginning to end contemplated the laying down of a complete modern asphalt pavement on Kahkwa Boulevard and this was the first pavement the city had anything to do with in this area on this boulevard. The city ordinance providing for the paving of the boulevard in 1927 is entitled "an ordinance for the grading, curbing, draining and paving of the roadway of Kahkwa Boulevard" a certain distance. The pavement cost $14,982.50. The order of court appointing viewers to assess damages and benefits refers to the *construction* [not the *repair*] of the said pavement." The body of the ordinance uses the same expression. The report of the viewers refers to the benefits "accruing from the *pavement*," not from any "repairing." The city engineer of Erie characterized the Tarvia pavement laid by the realty company about 1920 as not a permanent pavement. "Tarvia forms a pretty good base for pavement to be laid at a later date," he said. "Tarvia pavement is nothing but a temporary road; it is not intended for modern traffic at all," he added. The chief paving inspector of Erie testified that after the so-

called tarvia "paving" of the boulevard by the realty company "it wasn't a paved street." He said he "found a slag base" and in "some places a little tarvia on the top of the slag." He described the work done by the city on this street in 1927 as "levelling up the portion of the street that had fallen into decay and covering it with asphalt top." He said they found "the base out of shape," that the City of Erie had "no type of [street] improvement that was found on Kahkwa Boulevard, that the city used six-inch concrete base, one and one-half inch of binder and one and one-half inch of sheet asphalt."

In view of the opinion of this court in this case I know of nothing to prevent other real estate companies or private individuals from laying some kind of alleged pavement in front of their properties, without regard to the future grade of the street or to the needs and plans of the municipality, and then, after the municipality decides to pave that street in a uniform and adequate manner, contending successfully that the city could not assess the benefits of that pavement upon the abutting property owners. There is not a particle of evidence in this case to show that the City of Erie ever adopted the pavement laid down by the realty company. The city having never adopted as its own the paving product of the private corporation, it was not under the slightest obligation to give it legal recognition. It had an undoubted right to proceed as it did in 1927 to pave the streets according to its own plans and specifications and in a manner adequate to its traffic needs, and had the right to assess the benefits of the same upon the abutting property owners. A realty company cannot exercise municipal functions. The ordaining and constructing of pavements is a governmental function of a city. The City of Erie never abdicated any of its functions to the Kahkwa Park Realty Company. I would frustrate this (now apparently successful) attempted usurpation of

municipal functions by this company and deny to it the power to take away from the City of Erie the latter's right to control the paving of its own streets.