Miriam H. GIRSH

v.

Myers L. GIRSH, Merion, Pennsylvania.

Civ. A. No. 30032.

United States District Court
E. D. Pennsylvania.

June 5, 1963.

Laurence H. Eldredge and Francis X. Diebold, Philadelphia, Pa., for plaintiff.

Thomas D. McBride, Howard Gittis, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for defendant.

GRIM, District Judge.

Plaintiff brings this diversity action against her former husband for an accounting of the profits of business enterprises in which she and her then husband jointly were engaged and in which she claims an interest. Defendant has filed an answer and has moved for summary judgment based upon two contentions (1) that plaintiff has executed a release which relieves him of all liability in this action and (2) that plaintiff's action is barred by the statute of limitations or by laches.

## RELEASE

Shortly before they were divorced, the parties executed a property settlement agreement. The property they owned included not only property and property rights of the types which married couples usually own and which are usually dealt with in property settlement agreements attendant on divorce, but other types of property rights as well.

The first problem which this case presents is whether by a release incorporated in the property settlement, the wife released her rights in the business enterprises in which she and the husband had been engaged during coverture, and the property which had been acquired thereby.

Following a paragraph containing the wife's release of claims for maintenance, support, and alimony, the property settlement agreement continues:

"6. Each of the parties hereto hereby specifically waives and renounces all right to share in the estate of the other, and waives and releases any and all claims of any kind or nature (whether of dower, curtesy, right of survivorship, community, or otherwise) to any part of the property and estate of the other, both during the other's lifetime and after his or her death."

The language of this release is broad and sweeping. By it each party releases the other from "any and all claims of any kind or nature", enumerating dower, curtesy, right of survivorship, and community, and adding the words "or otherwise". It is a reasonable conclusion from the words of the property settlement agreement and release and from the fact that the parties contemplated that they would shortly be divorced, that they intended by the agreement to settle and dispose of any and all property rights and claims which then existed between them. Had it been intended to restrict the scope of the release to the four enumerated areas, this could very easily and clearly have been accomplished by leaving out the words "or otherwise", or by adding a saving clause explicitly excepting property rights arising from the parties' business ventures.

In short, the parties intended to settle all their common property rights and go their separate ways. This conclusion gains support from the preamble to the agreement, which states explicitly that the parties have agreed on a settlement of property rights and "upon a discharge of their obligations each to the other." [1]

Because of its broad scope, the release is broad enough to bar the claims asserted by the wife in the present action.

■ The wife contends, however, that the agreement incorporating the release is not valid because at the time she executed it she was not mentally competent. The husband disputes this, contending that this issue of fact was litigated and resolved in a prior proceeding between the parties and that not only was the issue resolved in the prior proceeding, but that the determination there made of the issue is res judicata and no longer open to dispute or litigation between the parties. The wife does not agree.

The prior proceeding to which the husband refers was in the Orphans' Court of Cambria County, Pennsylvania, on an account [2] in an estate created by a deed of trust executed by the husband and wife contemporaneously with and in pursuance of the above mentioned property settlement agreement, and shortly prior to the divorce proceedings between the parties. [3] The wife was the principal beneficiary of the trust, which had for its main object her support and maintenance. Both she and the husband contributed assets to the trust.

In the Orphans' Court proceeding the wife filed a petition in 1960 for rescission of the deed of trust and for the award to her of the principal of the trust. In that proceeding the wife appeared, by counsel, as petitioner, and the husband, together with the substituted trustee, and a remainderman (the daughter of the parties) appeared as respondents. The problem presented by this petition to rescind the deed of trust was before the Orphans' Court at the same time as was the audit of the trustee's account.

The wife's contention before the Orphans' Court and the basic issue before it (as it is the basic issue in the case at bar) was that at the time she executed the property settlement agreement and deed of trust she was mentally incompetent. After a trial lasting six days, the Orphans' Court determined that, although the wife was incompetent at times both before and after the execution of the settlement agreement and deed of trust, she executed them both

---

1. Since the recital is as broad as the release, the wife's reliance on the rule enunciated in Lancaster Trust Company v. Engle, 337 Pa. 176, 182, 10 A.2d 381 (1940)—that general language in a release is to be restricted to particular matters set forth in a recital—is misplaced.

2. "In the matter of the third account of Morton Meyers, Substituted Trustee under the Deed of Trust of Myers L. Girsh and Miriam Girsh"; File No. 30743.

3. The agreement and deed of trust were dated June 28, 1950. The divorce proceedings were begun June 30, 1950, and a final decree of divorce was entered September 18, 1950.

during a lucid interval, that she was mentally competent when she executed them, and that consequently both instruments were valid. The Orphans' Court also determined that she had been mentally competent since at least May 23, 1955. The decision of the Cambria County Orphans' Court was affirmed by the Pennsylvania Supreme Court on March 21, 1963, In re Meyers (Girsh Trust), 410 Pa. 455, 189 A.2d 852 (1963). Petition for Reargument denied, April 30, 1963.

The Orphans' Court determined that it had jurisdiction over the trust. That determination was not contested in the Orphans' Court in the Pennsylvania Supreme Court or in this court.[4]

■ The applicable Pennsylvania rule is succinctly stated in the syllabus of Downing v. Halle Bros. Co., 395 Pa. 402, 150 A.2d 719 (1959):

"4. When a court of competent jurisdiction has determined a litigated cause on its merits, the judgment entered, until reversed, is, forever and under all circumstances, final and conclusive as between the parties to the suit and their privies, in respect to every fact which might properly be considered in reaching a judicial determination of the controversy, and in respect to all points of law there adjudged, as those points relate directly to the cause of action in litigation and affect the fund or other subject matter then before the court."

The core of the rule as to questions of fact is stated in Restatement, Judgments § 68(1):[5]

"When a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action. * * *"

In applying this rule to the proceeding in the Orphans' Court, we find that the central issue was whether or not the wife was competent when she executed the property settlement agreement and the deed of trust. This issue was litigated between the husband and wife. Facing this disputed issue, the court could not have reached the conclusion that the instruments were valid without deciding that the wife was competent when she executed them, and its explicit finding to that effect was essential to that conclusion.

Similarly essential to the determination of the Orphans' Court that the wife ratified the two instruments by her conduct since 1955 was its additional finding of fact:[6]

"Petitioner was discharged from the Pennsylvania Hospital on May 23, 1955. She has been competent at least from that date and has remained continuously competent until the date of these proceedings."

Thus, in accordance with the rules of res judicata, the following facts are established in the present case: (1) that the wife was competent in 1950 when she executed the property settlement agreement incorporating the release; and (2) that the wife has been competent from May 23, 1955, until the Orphans' Court hearings in July of 1961. Further, there is no dispute between the parties as to the wife's continued competence from July of 1961 until the present.

The parties to the Orphans' Court proceeding (wife, husband, substituted trustee and remainderman) are not identical with the parties to the present action (wife and husband), and the wife contends that because of the difference

4. See Restatement, Judgments, § 10 (1942); Pennsylvania Orphans' Court Act of 1951, 20 P.S. §§ 2080.306, 2080.-308.

5. Cited in Thal v. Krawitz, 365 Pa. 110, 112, 113, 73 A.2d 376 (1950), pointing out that the more accurate term to be applied to situations involving prior determinations of questions of fact is collateral estoppel rather than res judicata.

6. In its opinion dismissing exceptions, filed July 25, 1962.

in parties the determination of the Orphans' Court is not res judicata here.

Comment i to Section 79 of the Restatement of Judgments says:

> "*Where there are more or fewer parties in successive actions.* If a valid judgment has been rendered in a proceeding involving a number of different parties the rules of res judicata apply [7] between such parties in subsequent proceedings in which there are additional or fewer parties, if but only if * * * they were adversaries in the first action. It is not essential that there be complete identity of the parties in the two proceedings. * * * It is essential only that the persons between whom the rules of res judicata are claimed to be effective should be the same in the two actions. * * *"

Both in the Orphans' Court and here the husband and wife actively opposed and oppose each other. Since they are adversaries both there and here, the rules of res judicata apply.

## BAR OF LACHES OR STATUTE OF LIMITATIONS

■ The husband contends that the present action commenced August 3, 1961, is barred by the Pennsylvania six-year statute of limitations, Act of March 27, 1713, 1 Sm.L. 76, § 1; 12 P.S. § 31. The wife contends that this action, being for an accounting, is a proceeding equitable in nature and therefore is not governed by the statute of limitations but can be barred only by laches. The husband counters this with the contention that the action is barred by both, and it matters not whether the action is at law or in equity.

The parties agree, and it is clear from an examination of the complaint, that this is a proceeding for an accounting.

The Pennsylvania Act of October 13, 1840, P.L. 1, § 19, 17 P.S. § 284,[8] provides:

> "The supreme court, the several district courts and courts of common pleas, within this commonwealth, shall have all the powers and jurisdiction of courts of chancery in settling partnership accounts, and such other accounts and claims, as by the common law and usages of this commonwealth, have heretofore been settled by the action of account render; and it shall be in the power of the party desirous to commence such action, to proceed either by bill in chancery, or at common law * * *."

There is no need to review here the history of the ingenious methods devised by the Pennsylvania bench and bar to make up for the long absence of courts in equity in that jurisdiction. Suffice it to say that the Act of 1840 merely added an equitable remedy for an accounting to the existing action at law.

The Pennsylvania Supreme Court, speaking through Mr. Justice Stern, said in Ebbert v. Plymouth Oil Company, 348 Pa. 129, 134, 135, 34 A.2d 493, 495, 496 (1943):

> " * * * But in any event, and even if there is no statute of limitations which in terms governs this action, it is well established that equity will frequently adopt and apply the statute of limitations which controls analogous proceedings at law. * * * This is especially, if not invariably, true if the cause of action is not exclusively cognizable in equity * * *, which is the situation here, because, where an accounting is desired, it may be obtained in a common-law proceeding * * *. Equity takes

---

7. "When it is stated that 'the rules of res judicata are applicable', it is meant that the rules as to the effect of a judgment as a merger or as a bar or as a collateral or direct estoppel are applicable." Restatement, Judgments (1942) Chapter

3, Former Adjudication, Introductory Note, at p. 161.

8. Suspended as to a provision not material here, Pa.R.C.P. 1550(3), 12 P.S.Appendix.

jurisdiction (under the Act of October 13, 1840, P.L. 1, sec. 19, 17 P.S. 284) only when the accounts are mutual or complicated, or when discovery [9] is needed and is material to the relief. * * * Because of this concurrent jurisdiction the statute of limitations is generally held to be a bar to proceedings in equity for an accounting when it would be a bar to an action at common law for the same matter. * * * The action for an accounting at law, being on the same plane, in practice, as an action in assumpsit * * * is subject to the same six-year limitation. * * * "

Thus, whether the present action is at law or in equity, it is subject to the six-year limitation whether by direct operation of the statute of limitations or by the doctrine of laches, which applies by analogy the term fixed by the statute of limitations.

Since the wife has been mentally incompetent, her right to litigate has been tolled and section 5 of the Act of March 27, 1713, 1 Sm.L. 76, 12 P.S. § 35 [10] must be considered. However, since it has been determined by the Orphans' Court that the wife has been mentally competent since May 23, 1955, and since the present action was brought on August 3, 1961, the result is the same whether section 1 (the limitation section) of the statute applies or whether section 5 (the tolling section) applies.

The facts stated herein are taken from an affidavit filed by defendant's counsel to which no opposing affidavit has been filed. It appears to me that there is no serious disagreement in reference to the facts stated herein. Consequently, I am making use of amended Rule 56 of the Fed.R.Civ.P. which permits findings of fact to be made upon statements in an affidavit, even though the amended rule does not go into effect until July 1, 1963. Of course, there is and was disagreement as to whether Mrs. Girsh was mentally competent when she executed the release. On this question of fact I am making no finding, but I rely upon the legal principle of res judicata as previously explained herein.

ORDER

AND NOW, June 5, 1963, defendant's motion for summary judgment is granted and the Clerk is directed to enter summary judgment in favor of the defendant, Myers L. Girsh, and against the plaintiff, Miriam H. Girsh.

---

9. Referring to the cumbersome procedure which existed prior to the modern procedural rules.

10. "If any person or persons, who is or shall be entitled to any such * * * actions of account * * *, he, or, at the time of any cause of such action given or accrued, fallen or come, shall be * * * non compos mentis * * * then such person or persons shall be at liberty to bring the same actions, so as they take the same within such times as are hereby before limited, after their coming to or being * * * of sound memory * * * as other persons."