McCarthy, et al. *v.* Township of McCandless.

612

Argued November 1, 1972, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*James W. Dunn, Jr.,* for appellant.

*John A. Robb,* with him *Royston, Robb, Leonard, Edgecombe, Miller & Urbanik,* for appellees.

OPINION BY JUDGE MENCER, February 27, 1973:

On November 27, 1967, the Board of Commissioners (hereinafter Board) of the Township of McCandless (hereinafter Township), Allegheny County, passed Ordinance No. 485 which authorized the grading, paving, curbing, and drainage of Belvedere Road and portions of Center Oak Drive and Albemarle Road (now collectively known as Center Oak Drive). Section 2 of that ordinance provided: "Upon completion of the said improvement, the total costs and expenses thereof shall be determined, and two-thirds of the said costs and expenses shall be assessed by Township Ordinance against the owners of real estate abutting thereon by an assessment based on the front foot, and collected in accordance with the assessing Ordinance." The Township assumed one-third of the total cost for street intersections and nonassessable properties.

When the work was completed, the Board, by Ordinance No. 530, enacted July 28, 1969, assessed the abutting property owners for two-thirds of the cost and expenses of the installation of the roadway.

Appellees, abutting property owners, then instituted an action against the Township by a complaint in equity filed December 5, 1969, seeking to have Ordinance No. 485 declared void (hereinafter the first case). The roads were alleged to be public roads or highways dedicated to the Township and accepted by it in 1948. This acceptance was confirmed by order of the Court of Quarter Sessions of Allegheny County dated June 17, 1948.

In its answer filed March 30, 1970, the Township alleged that the roads had never been paved because they were previously surfaced only with red dog, cinders, and boney, and that in all other aspects the roads

had never been improved. Therefore, the Township asserted, the improvements constituted an original paving for which the abutting property owners could be assessed under Section 2060 of the First Class Township Code, Act of June 24, 1931, P. L. 1206, §2060, as amended, 53 P.S. §57060.

After the case was tried on December 9, 1970, the chancellor, in his adjudication dated December 29, 1970, concluded that at the time the Township accepted the roads in 1948 it adopted the roads as they were then constructed as permanent installations. Therefore, the improvement authorized by Ordinance No. 485 was not a new street for which abutting property owners could be assessed. Since municipalities are liable for all repairs and maintenance on improved streets, *Erie's Appeal*, 305 Pa. 134, 157 A. 476 (1931), the chancellor issued a decree "that Section 2 of Ordinance 485 of 1967 of the Township of McCandless is void. The township and its officers are enjoined and restrained from filing or enforcing any municipal claims or liens for such improvement against the parties plaintiff herein." Neither were exceptions filed, nor was an appeal taken from this decree.

On February 22, 1971, the Township enacted Ordinance No. 574 assessing abutting property owners the full cost of *widening* a portion of Center Oak Drive. The ordinance reads in part: "Whereas the Board of Commissioners of the Township of McCandless has caused to be prepared a recalculation of the costs and quantities in accordance with the Court ruling so as to compute the cost of only that portion of the improvement whereby the road was widened, curbed and drained beyond the original road width and a new schedule indicated an assessment of $8.904576 per front foot against the abutting properties."

Appellees filed a petition on April 8, 1971, at the same number and term as in their initial action, asking

for a rule to show cause why Ordinance No. 574 should not be declared invalid also (hereinafter the second suit). By order dated June 23, 1971, the lower court made the rule absolute, declaring Ordinance No. 574 null and void and restraining the Township from filing any municipal claims or liens based on that ordinance. The Township filed exceptions to that order, and, after a hearing before the court en banc in December, 1971, the court dismissed the Township's exceptions in an opinion by Judge McKENNA (who was also the chancellor), joined by Judge PRICE, with Judge ALPERN dissenting. This appeal followed.

The primary issue is whether the abutting property owners may be separately assessed by the township for the widening of Center Oak Drive, or, in light of the chancellor's opinion and order, whether the township is precluded from doing so because of the doctrines of res judicata and collateral estoppel.

There is agreement between the parties "that where a street is widened, the cost of paving that portion of its width which is paved for the first time is assessable against the abutting property owners." *Mt. Lebanon Twp. v. Scheck*, 159 Pa. Superior Ct. 189, 192, 48 A. 2d 53, 55 (1946).

The lower court found that a reassessment for the cost of widening was precluded by the doctrines of res judicata and collateral estoppel. We must conclude that these doctrines are inapplicable to the facts of this case.

Although the rule of res judicata is said not to have been definitely formulated until 1776, *Duchess of Kingston's Case*, 3 Smith, *Leading Cases* 1998 (9th ed. 1776), it has evolved into an important doctrine of public policy to maintain general peace, promote certainty, and conserve the time of the courts.

Res judicata literally means a matter adjudged or a thing judicially acted upon or decided. From long

616

usage it has come to encompass generally the effect of one judgment upon a subsequent trial or proceeding.[1] Two quite distinct aspects are included: first, the effect of a judgment in a subsequent action between the parties based upon *the same cause of action;* second, the effect on the parties in a trial on *a different cause of action. See, e.g., Piro v. Shipley,* 33 Pa. Superior Ct. 278, 281-83 (1907) ; Restatement of Judgments §§47-55, 68-72 (1942).[2]

[1] "Speaking broadly, the rule of res judicata means that when a court of competent jurisdiction has determined, on its merits, a litigated cause, the judgment entered, until reversed, is, forever and under all circumstances, final and conclusive as between the parties to the suit and their privies, in respect to every fact which might properly be considered in reaching a judicial determination of the controversy, and in respect to all points of law there adjudged as those points relate directly to the cause of action in litigation and affect the fund or other subject-matter then before the court." von Moschzisker, *Res Judicata,* 38 Yale L.J. 299, 300 (1929) ; *Goldstein v. Ahrens,* 379 Pa. 330, 334, 108 A. 2d 693, 695 (1954).

[2] As stated by Justice FIELD in *Cromwell v. County of Sac,* 94 U.S. 351, 352-3 (1876) : "In considering the operation of this judgment, it should be borne in mind . . . that there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon *the same claim or demand,* and its effect as an estoppel in another action between the same parties upon *a different claim or cause of action.* In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action; it is a finality to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. . . . If such defenses were not presented in [a prior] action, and established by competent evidence, the subsequent allegation of their existence is of no legal consequence. The judgment is as conclusive, so far as future proceedings at law are concerned, as though the defenses never existed. The language, therefore, which is so often used, that a judgment estops not only as to every ground of recovery or defense actually presented in the action, but

Where the same cause of action is involved, the doctrine can be summarized: plaintiff's cause of action is merged in a final judgment if he wins, or barred by it if he loses. The scope of the merger or bar includes not only matters actually litigated but also all matters that should have been litigated. Frequently this doctrine is referred to by the generic name of res judicata, but it is sometimes termed "technical" res judicata to distinguish it from "collateral estoppel," discussed *infra*. For "technical" res judicata (or simply res judicata) to prevail, there must be a concurrence of four conditions: (1) Identity in the thing sued upon or for; (2) Identity of the cause of action; (3) Identity of persons and parties to the action; and (4) Identity of the quality or capacity of the parties suing or sued. *Stevenson v. Silverman,* 417 Pa. 187, 190, 208 A. 2d 786, 787-8 (1965), *cert. denied,* 382 U.S. 833 (1965); *Cameron Bank v. Aleppo Twp.,* 338 Pa. 300, 304, 13 A. 2d 40, 41 (1940).

The dissenting judge below correctly contended that conditions "1" and "2" were absent in this case (a discussion of condition "2" necessarily includes condition "1"). It is impossible to lay down an all-inclusive and satisfying formula to determine whether or not "causes of action" are identical.[3] The cases do perhaps warrant

---

also as to every ground which might have been presented, is strictly accurate, when applied to the [particular] demand or claim in controversy. . . . But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel *only as to those matters in issue or points controverted,* upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined." (Emphasis added.)

[3] "A 'cause of action' may mean one thing for one purpose and something different for another. It may mean one thing when

a definition to this extent: for purposes of res judicata, *there is identity of causes of action when in both the old and new proceedings the subject matter and the ultimate issues are the same.* Beyond this, determination of the question must rest in the sound discretion of the courts as applied to the circumstances of each case, having proper regard both to the public policy of res judicata and to the rights of the parties to have every bona fide issue passed upon. *See Developments in the Law—Res Judicata,* 65 Harv. L. Rev. 818, 824-31 (1952) ; Cleary, *Res Judicata Reexamined,* 57 Yale L. J. 339, 339-42 (1948).

Here, the things sued upon or for (or the subject matters; or the things in dispute; or the matters presented for consideration) were not the same, nor were the ultimate issues. In the first case, the subject matter was an assessment for an original paving; the ultimate issue was whether the improvements were an original paving or merely a repaving. In the second suit, the subject matter was an assessment for a widening; the ultimate issue was whether a widening of the previously paved roadway had occurred. Therefore, the second suit turned on a different "cause of action." This being so ("technical") res judicata does not apply to this case.

The second part of res judicata has come to be known as "collateral estoppel," which term was first used by the American Law Institute in Section 68, comment *a,* of its Restatement of Judgments (1942). *See* Scott, *Collateral Estoppel by Judgment,* 56 Harv. L. Rev. 1 (1942). In the development and application of collateral estoppel, Pennsylvania courts have adhered to the general rule set forth in §68(1) of the Restate-

---

the question is whether it is good upon demurrer, and something different when there is a question of the amendment of a pleading or of the application of the principle of res judicata." *U. S. v. Memphis Cotton Oil Co.,* 288 U.S. 62, 67-8 (1933) (CARDOZO, J.).

ment of Judgments: "Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action. . . ." *See, Pilgrim Food Products Co. v. Filler Products, Inc.,* 393 Pa. 418, 421-2, 143 A. 2d 47, 49 (1958); *Thal v. Krawitz,* 365 Pa. 110, 112, 73 A. 2d 376, 377 (1950); *see also Girsh v. Girsh,* 218 F. Supp. 888, 891 (E.D. Pa. 1963) (applying the law of Pennsylvania); *Comment, Collateral Estoppel in Pennsylvania,* 10 Duquesne L. Rev. 650 (1972); Restatement of Judgments §70 (1942). From this rule the courts have directly noted several basic requirements. Where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel in the second action only as to those matters in issue that (1) are identical; (2) were actually litigated; (3) were essential to the judgment (or decree, as the case may be); and (4) were "material" to the adjudication.

The lower court, in its opinion explaining why the rule to show cause should be made absolute, stated the following: "We find from an examination of the authorities on the subject that the Township's claim must be denied. The Adjudication in the Equity suit determined all matters raised there or which might have been raised. It is clear that in its original claim the Township might have asserted at least in the alternative that the street was being widened, and that it could collect for the cost of improving the new section. Also, it could have pleaded this position as a defense in the Equity suit. Not having done so, it is now barred."

But, quoting again from Pennsylvania Supreme Court Chief Justice VON MOSCHZISKER, "[W]here the cause of action in a pending suit is not identical with that previously litigated between the parties, all relevant issues of fact that were actually raised in the prior

litigation are res judicata between the parties and their privies,—*though, under such circumstances* (that is, where the second suit turns on a different cause of action) *issues which might have been, but were not, raised and determined in the prior suit, are not accounted in law as res judicata.*" 38 Yale L.J., *supra* note 1, at 301 (Emphasis added.)

*Importantly, the chancellor never made a factual determination that Center Oak Drive was actually widened.* In the first case, it was not necessary for him to do so, and in fact, throughout the pleadings and all of the testimony of the first case, the word "widening" was never mentioned, nor was it a contention until the 1971 ordinance. Thus, the issue in the first case was whether the assessment (Ordinance No. 530) was properly made for an original paving rather than for a repaving.

However, the issue in the second suit, pursuant to the second assessment (Ordinance No. 574), was whether a widening (and therefore an original paving of a portion) of Center Oak Drive had occurred. Required in the second suit, but absent, is a finding that a widening occurred.

Furthermore, we cannot agree that the township could reasonably be expected to have assessed (even in the alternative) the abutting property owners in Ordinance No. 530 for the full cost of widening Center Oak Drive. It did not do so because it thought itself correct in assessing them for two-thirds of the cost of an *original paving,* which would by necessity have included any widening. It would have been most contradictory for it to have assessed for an original paving *and* for a widening.

It would have been equally contradictory for the township to plead this position as a defense in the equity suit. To do so would have been very nearly admitting (since the medium was an assessing ordinance) that it was incorrect in assessing for an original paving.

It could not have consistently proceeded on the basis that, on the one hand, no paved road had ever existed (and thus the abutting property owners were liable for the first one), and, on the other hand, that it could properly assess for the full cost of a widening of the paved road previously existing. Again, "widening" was not even in the case at that point, and, in fact, there was serious dispute over whether certain roads included in the original assessment existed anywhere except on paper before the 1967 improvements.

Quite simply, the township, after being informed by the chancellor that a paved road had existed prior to the 1967 improvements, naturally (and for the first time was able) took the position that, since a road previously existed, an assessment could be made for widening it. Having been shown the error of its first way, the township then took a position effectively opposite to its first position.

The burden of shouldering these two necessarily diverse positions, in *defense* of its ordinances, could not be expected of the township in a single action. Usually the concepts of res judicata and collateral estoppel are contemplated in a different posture, *e.g.*, where a plaintiff sues successfully and is then challenged in an identical suit by the loser (or the successful plaintiff later sues additionally for what would be a double recovery). Or, where a plaintiff sues unsuccessfully and then attempts to bring a later suit which is effectively identical to the first suit.

Here, the abutting property owners sued to have an assessing ordinance nullified because, they alleged, the assessment was really for a repaving. In *defense* of its ordinance, which had been promulgated on the assumption that no paved road existed before the improvements, the township alleged that it was assessing for an original paving. Plaintiffs were successful, and the

township had to settle for a smaller[4] assessment on only that part of the whole improvements which was actually a new, original paving. Plaintiff owners again sued, and the township was again required to defend its ordinance. Should the township be barred from interposing the defense that the second suit was on a different cause of action, and, even though docketed at the same number and term, that the suit turned on different, undetermined factual determinations and on a different ultimate issue altogether? We think not.

Referring to the basic requirements for collateral estoppel, the second suit being on a different cause of action, the basic issue was not identical, and the factual question of whether a widening had occurred was not previously litigated. Collateral estoppel does not therefore preclude the township from interposing its defenses in a separate action in equity instituted by the abutting property owners. Or, as Judge ALPERN said in her dissenting opinion: "A challenge to the validity of the Township Assessment [Ordinance No. 574], must be on the merits on a second action in equity or in defense to a township suit in assumpsit. Since admittedly the Township may legally assess for paving the widened portion of a road, the [abutting property owners] must establish either that the original roads were not widened or that the assessment computation is incorrect."

Reversed.

DISSENTING OPINION BY JUDGE KRAMER:

I am in full accord with the majority's statement of the law. My dissenting position can be simply stated that I believe the principle of collateral estoppel should

---

[4] The total assessment for Ordinance No. 530 was $59,219.22 and was $55,270.37 for Ordinance No. 574. No irregularities in the computation of these sums were raised in this appeal, and we therefore do not discuss them further.

be applied to this case before us for the reason that Judge McKenna, in his adjudication in the first case, stated very clearly ". . . we believe that in the case at bar it must be held that the municipality accepted permanent streets in 1948 *and that the recent work constituted repairs.*" (Emphasis added.)

This fact, having been determined by the court in its initial adjudication, precludes the municipality from rearguing it. The municipality should be prevented from circumventing this determination by merely changing labels in a subsequent ordinance. Once found by a court to be a "repair," the law of this Commonwealth is that the municipality is responsible for the cost of same. *See Erie's Appeal,* 305 Pa. 134, 157 A. 476 (1931).

Judge Blatt joins in this Opinion.