Lamar T. Zimmerman, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued June 8, 1982, before President Judge CRUMLISH, JR. and Judges ROGERS, BLATT, CRAIG and MACPHAIL.

*R. James Reynolds, Jr.*, with him *John B. Huffaker, Pepper, Hamilton & Scheetz*, for petitioner.

*Christos A. Katsaounis*, Assistant Attorney General, for respondent.

OPINION BY JUDGE MACPHAIL, August 16, 1982:

This Petition for Review filed by Lamar T. Zimmerman (Petitioner) challenges an order entered by the Board of Finance and Revenue (Board) upholding an assessment of $164,351.43 by the Department

of Revenue (Department) against Petitioner comprised of a sales tax deficiency, a tax evasion penalty, a late filing penalty and interest for the period of January 1, 1976 to July 31, 1977. A partial stipulation of facts was entered into by counsel for both parties and filed with this Court on December 4, 1981. On February 1, 1982, this Court entered an order granting bifurcation of this matter into argument on legal issues followed, if necessary, by litigation of the actual amount of tax liability. The resolution of the legal issues is presently before this Court.[1]

The alleged sales which are the subject of this assessment involve sales of the drug methaqualone. Methaqualone[2] is a drug listed in Schedule II of the Pennsylvania Schedules of Controlled Substances, 28 Pa. Code §25.72(c)(6)(iv). As such, it may not be dispensed without a written prescription, except when dispensed directly to a patient by a practitioner. Section 11(a) of The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, *as amended,* 35 P.S. §780-111(a). Petitioner concedes that any sales made by him of methaqualone relevant to this case were made illegally.

The initial issue which we must determine is whether such illegal sales are subject to tax in view of Section 204(17) of the Tax Reform Code of 1971 (Tax Code), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §7204(17), which provides: "The tax imposed by [this Article] shall not be imposed upon . . . (17) The sale at retail or use of prescription or non-prescription medicines, drugs or medical supplies. . . ." The word "drugs," we note, is modified by the words "prescription or non-prescription." There-

[1] Both parties concede that all of these issues are matters of first impression in this Commonwealth.

[2] Known also as Quaalude.

fore, we must determine whether these alleged methaqualone sales were sales of prescription or non-prescription drugs.

Non-prescription drugs are those drugs typically referred to as "over the counter drugs." By definition an over the counter drug is one "capable of being sold legally without the prescription of a physician, dentist or veterinarian." Webster's Third New International Dictionary 1611 (1966). As previously noted, methaqualone is a Schedule II drug which requires a prescription for a legal sale. Therefore, these alleged sales would not be sales of non-prescription drugs.

Likewise we do not believe these alleged illegal sales should be considered sales of a "prescription drug." While methaqualone is undoubtedly a drug, without evidence that sales were made "only as prescribed by a physician,"[3] *i.e.* that the sales were made per written order of a physician or were made in the course of a doctor-patient relationship, then such sales should not be classified as sales of a "prescription drug." Therefore, these illegal sales would not come under the provisions of Section 204(17) of the Tax Code and thus may be taxed.

The next issue we must determine is whether the Department is barred by principles of res judicata or collateral estoppel from asserting as the dollar value of taxable sales any amount above what the Board, in a separate unappealed decision, had determined that Petitioner understated his income for the relevant time period for purposes of personal income tax liability.[4] The Department has raised a number of

---

[3] Definition of "Prescription Drug"—Webster's Third New International Dictionary 1792 (1966).

[4] The Board determined that Petitioner had understated his taxable income by $30,207.64.

arguments in opposition to the res judicata/collateral estoppel claim. Since we agree with one of the propositions raised by the Department, we shall not discuss its other contentions.

Res judicata and collateral estoppel are, of course, both judicial principles intended to bar relitigation of matters previously determined between two parties. A crucial aspect of both res judicata and collateral estoppel is the requirement of an identity of issues. *See Township of McCandless v. McCarthy,* 7 Pa. Commonwealth Ct. 611, 618-19, 300 A.2d 815, 820 (1973). In the present case, the critical issue is a determination of gross sales subject to tax; in the personal income tax case the critical issue was Petitioner's *income,* which is generally defined as gross income minus business expenses. Thus, a determination of Petitioner's income is not the same as a determination of Petitioner's gross sales. Furthermore, in view of the fact that Petitioner's income was determined by the Board based on the federal Internal Revenue Service's (IRS) net worth and source and application of funds methods of accounting[5] and not by a gross sales less costs analysis, then it is clear that gross sales were not previously determined even adjunct to the determination of personal income. We

---

[5] Stipulations of Fact Numbers 29-33. Under the net worth method, the IRS will establish a net worth of taxpayer's assets for the beginning of a given year, then prove the net worth at the end of the year and calculate the difference in the net values. To this is added the taxpayer's nondeductible expenses, including living expenses. If the resulting figure is greater than the amount reported on the taxpayer's return, the IRS will claim the excess as unreported income. *See Holland v. United States,* 348 U.S. 121, 125 (1954). Under the source and application of funds method, the amount by which a taxpayer's application of funds exceeds known sources of funds is considered unreported income. *See Finkbinder v. Commissioner,* 43 Tax Ct. Mem. Dec. (CCH) 1246, 1249 (1982).

conclude that the Department is not barred by either res judicata or collateral estoppel from making a determination of gross sales which varies from the amount of personal income determined in another matter by a different method and for a different purpose.

The third issue which we must now determine is whether Petitioner also may be assessed a late filing penalty and a tax evasion penalty. Section 266(a) of the Tax Code, 72 P.S. §7266(a), provides "In the case of failure to file any return required [under this Article] on the date prescribed therefor . . . there shall be added to the amount of tax actually due five percent of the amount of such tax [per month until filed], not exceeding twenty-five percent in the aggregate." An examination of the regulation implementing the return requirement, 61 Pa. Code §34.3 reveals that "Total Gross Sales" and "Nontaxable Sales" are required to be reported. Further, "[a]ny return not fully disclosing the required information shall be considered incomplete. . . ." It is therefore clear under these regulations that Petitioner was required to file a return because he had "gross sales" and, what he believed to be, "nontaxable sales." Thus, Petitioner may be subject to the late filing penalty.

The provision for a tax evasion penalty can be found in Section 267(b) of the Tax Code, 72 P.S. §7267(b). That section provides: "Any person who wilfully attempts, in any manner, to evade or defeat the tax imposed by this article . . . shall, in addition to other penalties provided by law, be liable for a penalty equal to one-half of the total amount of the tax evaded." This provision clearly is intended to punish behavior distinct from that punished by the late filing penalty. We are not here solely concerned with whether a person has failed to file (irrespective of whether a tax is owing); rather, we must deter-

mine whether there has been a *willful* attempt to evade a tax owing. In defining a willful attempt, we have looked for guidance to Section 302(g) of the Crimes Code,[6] 18 Pa. C. S. §302(g), which defines willfulness as acting "knowingly." Knowingly is defined under Section 302(b)(2)(i) of the Crimes Code as being "aware that . . . conduct is of that nature." Therefore to support a determination of a willful attempt to evade taxation, we believe the Department must show that Petitioner was aware that he was engaging in taxable sales in the contested transactions. Where, as here, the taxpayer is not made aware of the taxability of a transaction by reference to the Tax Code, implementing regulations of prior case law, he cannot be considered "aware" that he was evading taxation. Thus, application of the 50% penalty provision against the Petitioner in this case is improper.

Because of the bifurcation of this case, the attached decision and order will be entered.

### Decision and Order

The decision of this Court is that to the extent that the Commonwealth meets its burden of proof with respect to such sales, the illegal sales of methaqualone made by Lamar T. Zimmerman are subject to sales tax, late filing penalties and interest but not tax evasion penalties.

Upon praecipe by either party, the case will be fixed for an evidentiary hearing to determine the amount of tax, interest and penalties, if any, owed by the taxpayer, following which a final order will be entered by this Court.

---

[6] While the present case is not a criminal prosecution under Section 268 of the Tax Code, 72 P.S. §7268, we believe that the penal nature of Section 267 justifies our reference to the culpability standards of the Crimes Code.