602 A.2d 912

**J & L STEEL CORPORATION c/o LTV Steel Corporation, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (JONES), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 22, 1991.

Decided Jan. 27, 1992.

202

James R. Schmitt, for petitioner.

Tybe A. Brett, for respondent.

Before DOYLE and McGINLEY, JJ., and LORD, Senior Judge.

DOYLE, Judge.

This is an appeal by Jones & Laughlin Steel Corporation c/o LTV Steel Corporation (Employer) from an order of the Workmen's Compensation Appeal Board (Board) affirming a referee's decision to grant fatal claim benefits to Penelope Jones (Claimant) due to the death of her husband, James Jones (Decedent).

Claimant filed a fatal claim petition alleging that her husband died on September 15, 1986, due to long and continuous exposure to deleterious dusts, fumes, gases, and particulate matter including asbestos which caused cardiac arrest—respiratory failure which in turn caused his death. Employer filed an amended answer raising a defense of res judicata. This defense was based upon a different referee

having found in previous litigation that Decedent was not entitled to lifetime benefits because he had not proved he was disabled from an occupational disease. A brief explanation of the history of this other case, which we shall designate the lifetime claim, is necessary.

▮ Decedent filed a lifetime claim on June 18, 1984 alleging that he suffered from an occupational disease under Section 306(a) and Section 108 of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 511 and 77 P.S. § 27.1 respectively.[1] The referee found that Decedent suffered from a neuromuscular disease and a restrictive lung disease neither of which was caused or aggravated by his work with Employer. He also found that Decedent's sole reason for ceasing employment was his non-work-related neuromuscular disease. The referee therefore denied benefits on April 14, 1986. An appeal was taken and on June 19, 1987 the Board affirmed. It should be noted that during the pendency of that appeal Decedent died. Thereafter, a petition for rehearing was filed and granted.[2] The case was remanded to the referee for the introduction of additional evidence. The referee then filed a new adjudication and order on July 31, 1989 again denying Decedent lifetime benefits. The adjudication, however, also contained findings concerning Decedent's death [3] including the following:

9. On September 15, 1986, [Decedent] died solely from acute respiratory distress syndrome which was solely the result of his neuromuscular disease.

10. Some of the pathologic findings of the autopsy were consistent with asbestosis.

1. Section 27.1 was added to the Act by Section 1 of the Act of October 17, 1972, P.L. 930.

2. Consequently, an appeal of the Board's June 19, 1987 order to this Court was dismissed.

3. Obviously, findings on whether or not Decedent's *death* was due to an occupational disease were not essential, nor material, to his claim for lifetime benefits.

11. Assuming [Decedent] had pathologic asbestosis, such asbestosis was entirely unrelated to his disability and death.

12. Such asbestosis was not a substantial contributing factor in his disability and death.

Employer now argues that in the case at bar (the fatal claim case) these findings made in the lifetime claim preclude an award of fatal claim benefits on the basis of res judicata and/or collateral estoppel. Employer also argues that Claimant did not meet her burden to show that work-related asbestosis was a substantial contributing factor in bringing about Decedent's death and that Claimant did not prove an *exposure* to asbestos within three-hundred weeks after the date of the Decedent's death or disability. Finally, Employer contends that the calculation of benefits due, if any, was improper. We shall examine these questions keeping in mind that our scope of review is limited to determining whether the necessary findings are supported by substantial evidence and whether an error of law or constitutional violation has been committed. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

We begin with the question of whether Claimant met her burden of proof. To recover fatal claim benefits Claimant had to prove that the occupational disease of asbestosis was a substantial contributing factor in bringing about Decedent's death. *McCloskey v. Workmen's Compensation Appeal Board*, 501 Pa. 93, 460 A.2d 237 (1983). Further, where a death due to an occupational disease is claimed, in order to recover benefits a claimant must show that the death resulting from the disease occurred "within three hundred weeks after the last date of employment in an occupation or industry to which [the decedent] was exposed to hazards of such disease." Section 301(c)(2) of the Act, 77 P.S. § 411(2); *see also, Fortely v. Workmen's Compensation Appeal Board (Jones & Laughlin Steel Corp. (Buckeye)*, 117 Pa.Commonwealth Ct. 356, 543 A.2d 1248 (1988); *Jones & Laughlin Steel Corp. v. Workmen's*

*Compensation Appeal Board (Feiertag)*, 90 Pa.Commonwealth Ct. 567, 496 A.2d 412 (1985).

 Claimant presented the testimony of Harvey Mendelow, M.D., whom the referee found to be "credible and convincing." Dr. Mendelow in his deposition stated, *inter alia:*

Q. Could you relate your findings upon reviewing the autopsy, the initial autopsy findings and then your subsequent review of the additional microscopic slides?

A. Yes. At autopsy it was evident that Mr. Jones had died in acute respiratory failure because of the presence of extensive hemorrhage in his lungs known as acute respiratory distress syndrome. This is the kind of pattern that occurs when a patient has overwhelming interference with his respiration with secondary hemorrhage into the lung air spaces.

The remainder of the lungs revealed a very striking interstitial fibrosis or fiber scarring particularly of the lower lobes, and on microscopic examination this interstitial scarring was confirmed. It had a very special location; that is, it was around the terminal bronchiolar of air spaces and the alveolar walls. It was diffuse in the lower lobe sections, particularly more striking there than in the upper lobe sections, and contained numerous asbestos bodies.

Now, these asbestos bodies were seen on the standard light microscopic sections with no great difficulty and were rendered increasingly visible by the application of an iron stain. An asbestos body has a characteristic coating of iron and protein which can be revealed with this special stain and make it more visible.

So with this combination of the characteristic lower lobe interstitial fibrosis and the presence of numerous asbestos bodies is absolutely diagnostic of the condition known as pulmonary asbestosis and is consistent with a relatively severe degree of occupational exposure to asbestos fiber inhalation of a prolonged and cumulative nature.

Q. Doctor, the number of asbestos bodies that were demonstrated to be present in Mr. Jones' lung tissues, were they more or less than might be seen in the lungs of an ordinary urban dweller?

A. Literature states that in an ordinary urban dweller there are asbestos bodies which can be demonstrated by very special techniques, but with the techniques that I used, if you see more than one asbestos body per hundred sections, that is hundred microscopic sections, of lung tissue, you can begin to suspect the presence of occupational exposure to asbestos. In Mr. Jones' case there were numerous asbestos bodies on each and every section, so that there was no question whatsoever that this was occupational asbestos exposure.

. . . .

Q. Doctor, were you able to determine within a reasonable degree of medical certainty the cause or causes of Mr. Jones' death?

A. Yes, I believe I was.

Q. If you could relate them, please.

A. Mr. Jones expired of acute respiratory insufficiency characterized by the acute respiratory distress syndrome. This resulted from prolonged respiratory insufficiency due to progressive respiratory muscle weakness and paralysis requiring a mechanical respirator and was combined with the effect of progressive asbestosis as a substantial or significant contributory factor.

Dr. Mendelow's deposition, pp. 8–10, 11. This testimony is unequivocal as a matter of law and meets the *McCloskey* standard.

 Employer also asserts, however, that Claimant did not prove that Decedent was *exposed to* asbestos within three-hundred weeks of his death. The statute does not require exposure within three-hundred weeks of death but rather requires death within three-hundred weeks of the date the decedent last worked in the occupation or industry where the exposure occurred. No one disputes that Decedent's last day of work was April 7, 1983 and that he died

on September 15, 1986. Thus, he certainly died within three-hundred weeks of his last day of work. And, while the record evidence that his *exposure* to asbestos was within three-hundred weeks of his death may be weak, even Employer does not claim that he was never exposed to asbestos asserting only that the exposure was too temporally remote to trigger liability. As we reject this notion, we conclude that Claimant met her burden of proof.

We move now to a consideration of whether res judicata and/or collateral estoppel bars Claimant's recovery. Employer maintains that Claimant is barred by the findings quoted above which appeared in Decedent's adjudication concerning his lifetime claim. For res judicata to bar recovery there must be a concurrence of four conditions: "(1) Identity in the thing sued upon or for; (2) Identity of the cause of action; (3) Identity of persons and parties to the action; and (4) Identity of the quality or capacity of the parties suing or sued." *McCarthy v. Township of McCandless*, 7 Pa.Commonwealth Ct. 611, 617, 300 A.2d 815, 820 (1973). "[T]here is identity of causes of action when in both the old and new proceedings the subject matter and the ultimate issues are the same." *Id.*, 7 Pa.Commonwealth Ct. at 618, 300 A.2d at 820 (emphasis deleted).

Decedent was suing for lifetime benefits. The issues in his case were whether he was injured in the course of his employment and disabled by said injury. Claimant seeks fatal claim benefits. The issue in her case is whether work-related asbestosis was a substantial contributing factor in bringing about Decedent's death. Obviously, then there is no identity in causes of action here. Further, a widow's right to compensation is a separate cause of action independent of the decedent's rights. *Penn Steel Foundry & Machine Co. v. Workmen's Compensation Appeal Board (Wagner)*, 122 Pa.Commonwealth Ct. 171, 551 A.2d 653 (1988). Therefore, we do not have identity of parties and there is thus no basis for holding that res judicata dictates reversal of the Board's order.

With respect to collateral estoppel, "[w]here the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as to estoppel in the second action only as to those matters in issue that (1) are identical; (2) were actually litigated; (3) were essential to the judgment (or decree, as the case may be); and (4) were 'material' to the adjudication." *McCarthy,* 7 Pa.Commonwealth Ct. at 619, 300 A.2d at 820–21. As we stated above (op. p. 914, n. 3) the referee's findings on whether or not Decedent's death was due to an occupational disease were not essential to his lifetime claim nor were they material to that adjudication, but, most important, critical medical evidence and testimony was available and introduced in the fatal claim case that certainly was not available (the autopsy report and findings) in the lifetime claim litigation. Accordingly, the findings in the lifetime proceedings cannot operate to bar Claimant from recovery here.

Finally, we consider whether the referee incorrectly calculated the amount of compensation due. The referee found, and Employer does not challenge, that at the time of his death Decedent had a wife (Claimant) with whom he was living and three children. He also found that at the time of Decedent's death the children were ages twenty-one, twenty and eighteen. He further determined that Decedent's weekly wage was $513.46. He then, inexplicably, determined that Claimant was entitled to 52% of this figure or $267.00. We cannot understand why this percentage was employed as it is the statutory amount to be used in a situation where there are three children, *but no widow.* *See* Section 307(1)(c) of the Act, 77 P.S. § 561(1)(c). Claimant appears to agree with this figure, although we cannot see how it could be correct. Employer asserts that the correct amount is 51% or $261.86. This figure applies where there is a widow with no children. *See* Section 307(2) of the Act, 77 P.S. § 561(2). This amount, however, *might* be correct. Section 307 of the Act, 77 P.S. 562, limits the rights of children to benefits. It pertinently provides:

> Compensation shall be payable under this section to or on account of any child ... only if and while such child ... is under the age of eighteen unless such child ... is dependent because of disability when compensation shall continue or be paid during such disability of a child ... over eighteen years of age or unless such child is enrolled as a full-time student in any accredited educational institution when compensation shall continue until such student becomes twenty-three.

The referee, however, made no findings with respect to the health or educational status of Decedent's children. Thus, we cannot tell whether, despite the fact that all of them are eighteen or older, some or all may be entitled to benefits. And, while the issue of the amount of compensation was properly raised before the Board, it did not address this point. We are thus, forced to remand for findings on this issue.

Accordingly, while we agree that Claimant is entitled to benefits, we shall vacate the Board's order and remand for further findings relevant to the issue of what percentage of benefits are proper here.

## ORDER

NOW, January 27, 1992, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby vacated and this case is remanded for further proceedings consistent with this opinion.

Jurisdiction relinquished.